[Cite as *State ex rel. Pilarczyk v. Geauga Cty.*, 2018-Ohio-1478.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Joshua N. Pilarczyk, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 17AP-174 |
| | : | |
| Geauga County, Sarah Morrison,<br>Administrator, Ohio Bureau of Workers'<br>Compensation and The Industrial<br>Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| | : | |
| Respondents. | : | |

## D E C I S I O N

### Rendered on April 17, 2018

**On brief:** *Dworken & Bernstein Co., LPA*, and *Stacy M. Callen*, for relator.

**On brief:** *Susan T. Wieland*, Assistant Prosecuting Attorney, Geauga County Prosecutor's Office, for respondent Geauga County.

**On brief:** *Michael DeWine*, Attorney General, and *Amanda B. Brown*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Joshua N. Pilarczyk, has filed a request for a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the May 17, 2016 order of its staff hearing officer ("SHO") that denies his application for permanent total disability ("PTD") compensation, and to enter an order granting that compensation.

{¶ 2}    Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court issue a writ of mandamus ordering the commission to vacate the May 17, 2016 order denying the application for PTD and to enter a new order adjudicating the PTD application.

{¶ 3}    The commission has filed the following objection to the magistrate's decision:

> The Magistrate erred in finding that the report of Dr. Gruenfeld fails to provide "some evidence" upon which the Industrial Commission could rely to reach its decision.

{¶ 4}    As explained in the magistrate's decision, the SHO denied relator's PTD request, relying on the report of Dr. Bina Mehta regarding relator's physical conditions and the report of Dr. Kenneth Gruenfeld regarding relator's psychological conditions. The magistrate concluded Dr. Gruenfeld's report was equivocal and, therefore, it must be eliminated from evidentiary consideration and could not constitute some evidence to support the SHO's determination of relator's residual functional capacity.

{¶ 5}    This court has previously explained that the commission must evaluate an injured worker's residual functional capacity in adjudicating a PTD application:

> In determining whether relator is capable of performing sustained remunerative employment, the commission shall first consider the medical evidence and determine relator's residual functional capacity. Ohio Adm.Code 4121-3-34(B)(4). After consideration of the medical evidence, if the commission determines that relator is unable to return to his former position of employment, but may be able to engage in sustained remunerative employment, the commission shall then consider nonmedical and vocational factors, known as the *Stephenson* factors, found at Ohio Adm.Code 4121-334(B)(3). See Ohio Adm.Code 4121-3-34(D)(2)(b) and (c); see also *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167; *State ex rel. Corona v. Indus. Comm.* (1998), 81 Ohio St.3d 587; and *State ex rel. Nikoli v. Indus. Comm.*, 10th Dist. No. 08AP-349, 2009-Ohio-243, ¶ 5-6.

*State ex rel. Seitaridis v. Delta Plating, Inc.*, 10th Dist. No. 10AP-494, 2011-Ohio-3593, ¶ 10.  *See also State ex rel. Nickoli v. Indus. Comm.*, 10th Dist. No. 08AP-349, 2009-Ohio-243, ¶ 30 ("The commission must make a clear indication of residual functional capacity.").

{¶ 6}    The commission cannot rely on a medical opinion that is equivocal or internally inconsistent. *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-

Ohio-6036, ¶ 11, citing *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649 (1994); *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994). "Equivocation disqualifies an opinion from consideration and occurs 'when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.' " *George* at ¶ 15, quoting *Eberhardt* at 657. The commission argues the magistrate erred by concluding Dr. Gruenfeld's report was equivocal on the issue of whether relator was capable of employment. However, having reviewed the record and the magistrate's decision, we agree with the magistrate's conclusion that Dr. Gruenfeld's response was ambiguous as to whether relator was unable to return to his former position of employment or unable to hold any position of employment. Because this ambiguity was not resolved, Dr. Gruenfeld's report could not constitute some evidence to support the commission's conclusion regarding the issue of relator's residual functional capacity.

{¶ 7} Upon review of the magistrate's decision, an independent review of the record, and due consideration of the commission's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule the commission's objection to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, we grant a writ of mandamus ordering the commission to vacate the May 17, 2016 order of the SHO denying relator's application for PTD and, in a manner consistent with this court's decision and the magistrate's decision incorporated herein, enter a new order adjudicating the PTD application.

*Objection overruled;*
*writ of mandamus granted.*

TYACK, J., concurs.
LUPER SCHUSTER, J., dissents.

LUPER SCHUSTER, J., dissenting.

{¶ 8} Because I disagree with the majority's conclusion that Dr. Gruenfeld's report is equivocal and cannot be used to constitute some evidence to support the SHO's determination of relator's residual functional capacity, I respectfully dissent.

{¶ 9} In adopting the magistrate's decision, the majority concludes the commission abused its discretion when it relied on Dr. Gruenfeld's report because it deems Dr. Gruenfeld's report to be equivocal or internally inconsistent. More specifically, the majority

considered Dr. Gruenfeld's response to the second query in his report to be ambiguous, stating Dr. Gruenfeld failed to clarify whether his conclusion that relator's "problems with distractibility and motivation inhibit his ability to return to work at this time" applies only to relator's potential return to his former position of employment or whether it would apply to his potential return to any sustained remunerative employment.  (Mag.'s Decision at ¶ 12.)

{¶ 10} Unlike the majority, I would not find Dr. Gruenfeld's response to the second query in his report to be ambiguous.  The question asks, specifically, whether the injured worker can return to his former position of employment.  In the first sentence of his response, Dr. Gruenfeld answers this question unequivocally: relator cannot return to his former position of employment due to his mental health issues.  The subsequent two sentences, when read in context of the specific question asked, explain the rationale for Dr. Gruenfeld's conclusion to the specific question asked.

{¶ 11} In response to a subsequent, separate query, Dr. Gruenfeld then opines relator would be capable of performing work in a low-stress office environment.  Again, I would read this response in the context of the query to which it responded, and I would not find it to be internally inconsistent with Dr. Gruenfeld's response to the second query.  Thus, I would conclude these responses in Dr. Gruenfeld's report serve as some evidence for the SHO to rely on in concluding relator is not entitled to an award of PTD.

{¶ 12} For these reasons, I would sustain the commission's objection to the magistrate's decision, reject the magistrate's conclusions of law, and deny the requested writ of mandamus.  Because the majority has determined otherwise, I respectfully dissent.

————————————

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Joshua N. Pilarczyk, | : | |
| Relator, | : | |
| v. | : | No. 17AP-174 |
| Geauga County et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## MAGISTRATE'S DECISION

### Rendered on November 20, 2017

*Dworken & Bernstein Co., LPA,* and *Stacy M. Callen,* for relator.

*James R. Flaiz,* Geauga County Prosecuting Attorney, and *Susan T. Wieland,* for respondent Geauga County.

*Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 13} In this original action, relator, Joshua N. Pilarczyk, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the May 17, 2016 order of its staff hearing officer ("SHO") that denies his application for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 14}  1.  On February 24, 2002, relator injured his lower back while employed as a maintenance worker for respondent Geauga County, a state-fund employer.

{¶ 15}  2.  The industrial claim (No. 02-327542) is allowed for:

> Disc herniation L4-5 and L5-S1; L5-S1 radiculopathy; adjustment disorder with mixed anxiety and depressed mood; dysthymic disorder; L3-4 herniated nucleus pulposus; L3-4 degenerative disc disease; L4-5 degenerative disc disease; L5-S1 degenerative disc disease.

{¶ 16}  3.  Relator received temporary total disability ("TTD") compensation for his allowed psychological conditions until June 15, 2015 when the commission determined that the psychological conditions had reached maximum medical improvement ("MMI") based on the April 28, 2015 report of psychologist Kenneth Gruenfeld, Psy.D.

{¶ 17}  4. On April 28, 2015, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by Dr. Gruenfeld.  In his seven-page narrative report, Dr. Gruenfeld states the purpose of his examination and then responds to six queries:

> Mr. Pilarczyk was referred to this examiner for a psychological assessment by the Ohio Bureau of Workers' Compensation to obtain this examiner's opinion regarding the extent of his psychological disability and the medical necessity and appropriateness of his current treatment and/or potential to return to work.
>
> * * *
>
> **[One] Has the injured worker reached a treatment plateau that is static or well stabilized at which you can expect no fundamental or psychological change within reasonable medical probability in spite of continuing medical or rehabilitation (maximum medical improvement)? Include rational[e] for your decisions.**
>
> In looking at the totality of the evidence provided to this examiner, it appears Mr. Pilarczyk has achieved MMI at this time. According to the Summary of HPP Psych CPTS by claim, the [Injured Worker] has participated in 26 treatment sessions. This is more than the OEG Guidelines of 13-20 treatment sessions. According to the Psychotherapy Case Note, dated May 20, 2014, the [Injured Worker] reports is

feeling "poorly" emotionally. He exhibits "catastrophizing" and negative thoughts.

According to the Psychotherapy Case Note, dated June 4, 2014, the [Injured Worker] reports increased problems with crying spells. There is no indication of treatment progress. Given the data before the evaluator, it is believed that the [Injured Worker] has achieved MMI at this time.

**[Two] Can the injured worker return to his/her former position of employment? If yes, are there any restrictions or modifications?**

The claimant's mental health issues likely do prevent him from returning to his former position of employment. His problems with depression continue to manifest including problems with focus and motivation. It is believed that his problems with distractibility and motivation inhibit his ability to return to work at this time.

**[Three] Please provide a summary of any functional limitations solely due to the psychological condition in this claim. In other words, please indicate the type of work the injured worker can perform and supportive rational[e] for your opinion.**

Given his current mental health issues, he is unlikely to thrive in a moderate to high stress job setting. He is more likely able to work a job in an office where there is less stress to trigger his depressive based condition.

**[Four] Are there any recommendations for vocational rehabilitation?**

Yes. Vocational rehabilitation is recommended at this time. Given his current intelligence, ability to communicate his needs and his responsibility in going to doctor appointments, it is believed that he may be able to manage a vocational rehabilitation program at this time.

**[Five] Is the current treatment necessary and appropriate for the psychological condition(s)?**

The treatment, psychotherapy and medication management, are appropriate for the psychological condition of the claimant. In terms of necessity, it is believed by this examiner that the injured worker has achieved MMI and is no longer gaining additional benefits from psychotherapy.

**[Six] What are your recommendations for any proposed plan of treatment including expected length of treatment and results?**

There are no proposed changes to therapy goals or modality as the goals and modality are appropriate at this time. Future treatment should [consist] of 5 treatment sessions over 5 months to complete treatment goals and finalize termination.

{¶ 18} 5. Earlier, on January 9, 2015, treating physician Michael J. Kellis, D.O., wrote:

I believe within a reasonable degree of medical certainty that this patient is permanently and totally disabled as a direct and proximate result of his allowed conditions in his Workers' Compensation Claim. I have seen Mr. Pilarczyk attempt to return to work numerous times, but he was unfortunately not able to do so. He has had epidural steroid injections, trigger point injections, and various forms of steroid and non-steroid medications, with no real relief. His work-related injuries prohibit him from returning to his former position of employment as a maintenance worker.

In addition, his injuries prohibit him from returning to any gainful employment. Any standing any longer than five to 10 minutes is painful. Any repetitive bending and stooping is also uncomfortable for this patient.

I believe that Mr. Pilarczyk's condition is permanent and that his conditions will continue for an indefinite period of time without any present indication of recovery.

{¶ 19} 6. On July 20, 2015, Dr. Kellis wrote:

I do believe that Mr. Pilarczyk is permanently and totally disabled as a direct and proximate result of his allowed conditions in this Workers' Compensation claim. He is not able to perform remunerative employment due to his allowed conditions.

* * *

I do believe that Mr. Pilarczyk suffers from chronic pain. It does affect his activities of daily living and his ability to work and function in a safe work environment. Mr. Pilarczyk's medical impairments resulting from the allowed conditions in this claim prohibit him from returning to his former position of

employment as a maintenance worker. I do believe that Mr. Pilarczyk's condition is permanent within a reasonable degree of medical probability and it will continue for an indefinite period of time without any indication of recovery.

{¶ 20} 7. On July 20, 2015, relator filed an application for PTD compensation. In support, relator submitted the reports of Dr. Kellis.

{¶ 21} 8. On September 9, 2015, at the commission's request, relator was examined by psychologist Joseph P. Pecorelli, Ph.D. Dr. Pecorelli examined only for the allowed psychological conditions of the claim. In his 11-page narrative report, Dr. Pecorelli opined:

Mr. Pilarczyk is a 36-year-old divorced Caucasian male who has not worked since September 2009. He currently resides with his family in his parents' home. The [Injured Worker] was independent and fully functional prior to his injury. The [Injured Worker] continues to experience emotional distress characterized as an Adjustment Disorder with Mixed Anxiety and Depressed Mood and Dysthymic Disorder. His emotional distress appears to be at least at a moderate level of severity with the [Injured Worker] continuing to experience periods of more severe emotional distress. The ongoing symptoms of emotional distress as described above would prove to be barriers for any return to gainful employment. It is for those reasons that this examiner has to conclude that the [Injured Worker's] allowed conditions have not changed and he has continued to be at Maximum Medical Improvement (MMI). In light of his voicing of suicidal ideation and thoughts of self harm, the [Injured Worker] was encouraged to resume supportive psychological and psychiatric intervention. He indicated that he was under the impression that he was no longer eligible for treatment since being made MMI.

{¶ 22} 9. In early October 2015, Dr. Pecorelli completed a form captioned "Occupational Activity Assessment, Mental & Behavioral Examination." On the form, Dr. Pecorelli indicated by his mark "[t]his injured worker is incapable of work." In the space provided, Dr. Pecorelli states:

Mr. Pilarczyk's Occupational Activity Capacity is significantly influenced by the allowed psychological conditions or his emotional distress characterized as Adjustment Disorder with Mixed Anxiety and Depressed Mood and Dysthymic Disorder. These allowed psychiatric conditions have lasted over two years and are considered chronic according to DSM-IV criteria. From a psychological perspective and taking into consideration the [Injured Worker's] four areas of general functioning, the [Injured Worker] is not capable of gainful employment.

{¶ 23} 10. On October 20, 2015, an SHO mailed a "Tentative Order" granting the PTD application. The order explains:

> After full consideration of the issue, it is the order of the Staff Hearing Officer that the Application for Permanent and Total Disability filed on 07/20/2015 be GRANTED. This order is based upon the Industrial Commission Specialist exam, dated 10/07/2015, of Joseph Pecorelli, Ph.D. Dr. Pecorelli found the Injured Worker would not be able to perform any sustained remunerative employment based upon the allowed conditions. Permanent total disability benefits are to be paid from 10/07/2015. This is less any temporary total disability compensation paid over the same period. This starting date is based upon the report of Dr. Pecorelli, dated 10/07/2015.
>
> This Staff Hearing Officer further finds that where medical factors alone preclude sustained remunerative employment, it is not necessary to consider the Injured Worker's non-medical disability factors. State ex rel. Galion Mfg. Div., Dresser Industries v. Haywood (1991), 60 Ohio St.3d 38.

(Emphasis sic.)

{¶ 24} 11. Apparently, the bureau filed timely objections to the October 20, 2015 tentative order.

{¶ 25} 12. Earlier, at the commission's request, on September 14, 2015, relator was examined by Bina Mehta, M.D., for the allowed physical conditions of the claim. In his four-page narrative report, Dr. Mehta opined:

> Based solely on the allowed physical conditions in this claim, the injured worker could perform work within the sedentary work capacity category. He would require an ambulatory assistive device as needed. He should be allowed to take breaks as needed. Of note, the injured worker has significant nonorganic findings seen on physical examination today, but from a physical perspective, there is no reason that he should not be able to perform work within the sedentary work capacity category with breaks as needed.

{¶ 26} On September 14, 2015, Dr. Mehta completed a form captioned "Physical Strength Rating." On the form, Dr. Mehta indicated by his mark that relator can perform "sedentary work."

{¶ 27} Under "[f]urther limitations, if indicated," and in the space provided, Dr. Mehta wrote in his own hand:  "May require ambulatory assistive device. Allow breaks as needed."

{¶ 28} 13.  Following a May 17, 2016 hearing, an SHO issued an order denying the PTD application.  Mailed June 25, 2016, the SHO's order of May 17, 2016 explains:

> This order is based upon the reports of Bina Mehta, M.D., dated 09/14/2015, Kenneth Gruenfeld, Psy.D., dated 04/28/2015, and Injured Worker's non-medical disability factors.
>
> Dr. Mehta, who examined Injured Worker for the recognized physical conditions, opined Injured Worker has reached maximum medical improvement for the allowed physical conditions and assigned a 13% impairment. Dr. Mehta found Injured Worker could perform work within the sedentary work capacity category and Injured Worker would require ambulatory assistive device and would have to take breaks as needed. Dr. Mehta further opines Injured Worker demonstrated significant non-organic findings on examination, but finds from a physical perspective, no reason Injured Worker should not be able to perform work within the sedentary work category.
>
> Kenneth Gruenfeld, Psy.D., examined Injured Worker on behalf of the Bureau of Workers' Compensation, and opined Injured Worker has reached maximum medical improvement for the allowed psychological condition. Dr. Gruenfeld opines Injured Worker is capable of work in a low stress job and further recommended vocational rehabilitation.
>
> * * *
>
> Based upon the opinions of Drs. Mehta and Gruenfeld, as accepted herein, Staff Hearing Officer finds Injured Worker's allowed physical and psychological conditions have reached maximum medical improvement and are permanent. Staff Hearing Officer further finds that Injured Worker's impairment from the allowed physical and psychological conditions alone is not dispositive of the application for permanent total disability, and therefore, consideration of and analysis of Injured Worker's non-medical disability factors is appropriate.
>
> Injured Worker is currently 37 years old with a high school diploma and two years auto tech training. Injured Worker can read, write and perform basic math functions. Injured Worker has a work history as an auto mechanic helper, laborer and

maintenance work. Injured Worker's last position of employment was as a maintenance worker for approximately nine years with the Employer of Record. Injured Worker performed general maintenance, performed repairs of equipment and possesses certification for operation of tow motor and other Class A CDL equipment. Injured Worker further was responsible for reading service manuals, preparing written work orders and managing a variety of work duties. The Injured Worker additionally possesses the ability to read blueprints and manage varying tasks associated with his reported work experience.

In general, age refers to ones chronological age and the extent to which ones age affects the ability to adapt to new work situations. Generally the younger one is, the greater the ability to adapt to new work situations.

Staff Hearing Officer, finds based upon Injured Worker's young age at 37, Injured Worker has a greater ability to adapt to new work situations and has considerably more work life and ability to be retrained within the sedentary work category, and therefore, that Injured Worker's age and education are positive vocational factors to be considered in determining whether Injured Worker has the ability for sustained remunerative employment.

Staff Hearing Officer further finds Injured Worker was 22 years old at the time of injury and successfully completed a vocational rehabilitation with an actual return to work full duty for some period of time. Staff Hearing Officer finds while the claim file and record are unclear as to the exact dates of employment that the Injured Worker last worked in October of 2009.

Staff Hearing Officer finds Injured Worker was subsequently granted further temporary total disability compensation based upon additional physical conditions and psychological conditions in the claim through 03/29/2012. Injured Worker underwent a Functional Capacity Evaluation on 07/03/2012 with referral for vocational rehabilitation but Injured Worker was found not feasible due to lack of interest in participation per closure letter, dated 08/01/2012.

Temporary total disability compensation was again reinstated for the allowed psychological condition until Injured Worker was found to have reached maximum medical improvement on 06/15/2015. Staff Hearing Officer finds that the 04/28/2015 report of Kenneth Gruenfeld, Psy.D. was relied upon in

terminating temporary total disability compensation and found the Injured Worker capable of vocational rehabilitation. Injured Worker was again contacted on 06/18/2015 for referral to vocational rehabilitation with no response by Injured Worker.

Staff Hearing Officer additionally finds that the Mental Health Summaries by the treating mental health professionals from 05/11/2015 and 06/29/2015 also indicate Injured Worker's goal to return to regular meaningful activity and preferably return to work consistent with Dr. Gruenfeld's opinion that Injured Worker could participate in vocational rehabilitation.

Pursuant to *Speelman v. IC* (1992) 73 O.App.3d 757, *B.F. Goodrich Company v. IC* (1995), 73 O.St.3d, *Bowling v. National Can Corp.,* (1996), 77 O.St.3d 148, and *Wilson v. IC,* (1997), 80 Ohio St.3d 250, Injured Worker has a responsibility to undergo appropriate and reasonable medical and/or vocational rehabilitation which will either enable an Injured Worker to increase his residual functional capacity, and/or obtain new, marketable employment skills, and thereby increase his potential employability. Staff Hearing Officer finds Injured Worker's failure to attempt vocational rehabilitation as recommended by the 04/28/2015 opinion of Dr. Gruenfeld and consistent with the goals as contained within the treating mental health professionals, to be a negative factor in evaluating Injured Worker's application for permanent total disability.

* * *

Based on the above listed physical capacities and non-disability factors, Staff Hearing Officer finds that Injured Worker's disability is not total and that the Injured Worker is capable of engaging in sustained remunerative employment in a sedentary capacity, or being retrained to engage in sustained remunerative employment in a sedentary capacity. Therefore, Injured Worker's request for permanent total disability compensation is denied.

{¶ 29} 14. On July 7, 2016, relator moved for reconsideration of the SHO's order mailed June 25, 2016. On August 4, 2016, the three-member commission mailed an order denying relator's request for reconsideration.

{¶ 30} 15. On August 18, 2016, relator moved for reconsideration of the commission's order mailed August 4, 2016. On September 21, 2016, the three-member commission mailed an order denying relator's August 18, 2016 motion for reconsideration.

{¶ 31} 16. On March 7, 2017, relator, Joshua N. Pilarczyk, filed this mandamus action.

Conclusions of Law:

{¶ 32} The issue is whether the report of Dr. Gruenfeld currently provides some evidence upon which the commission can and did rely in determining the mental component of "residual functional capacity." Ohio Adm.Code 4121-3-34(B)(4). Finding that the report of Dr. Gruenfeld currently fails to provide some evidence supporting the commission's determination of residual functional capacity, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 33} In her May 17, 2016 order, the SHO interprets Dr. Gruenfeld's report to opine that relator "is capable of work in a low stress job." Relator disagrees with the SHO's reading of the report. According to relator, Dr. Gruenfeld did not actually opine that relator is capable of work. Thus, relator contends that the SHO's determination of residual functional capacity is based on a misinterpretation of the report and that the report fails to provide some evidence that the psychological conditions of the claim permit work to some degree.

{¶ 34} Relator also argues that the report of Dr. Gruenfeld is equivocal and, thus, cannot provide some evidence to support the SHO's determination of residual functional capacity.

{¶ 35} Equivocal medical opinions are not evidence. *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994). Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. *Id.* Ambiguous statements, however, are considered equivocal only while they are unclarified. *Id.*

{¶ 36} In *Eberhardt*, the court explained the concept of ambiguity with respect to doctor's reports:

> Moreover, ambiguous statements are inherently different from those that are repudiated, contradictory or uncertain. Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable. Such statements relate to the doctor's position on a critical issue. Ambiguous statements, however, merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently unreliable. Such statements do not relate to the doctor's position, but to his

> communication skills. If we were to hold that clarified statements, because previously ambiguous, are subject to [*State ex rel. Jennings v. Indus. Comm.,* 1 Ohio St.3d 101 (1982)] or to commission rejection, we would effectively allow the commission to put words into a doctor's mouth or, worse, discount a truly probative opinion. Under such a view, any doctor's opinion could be disregarded merely because he failed on a single occasion to employ precise terminology. In a word, once an ambiguity, always an ambiguity. This court cannot countenance such an exclusion of probative evidence.

*Id.* at 657.

{¶ 37} A medical report can be so internally inconsistent that it cannot be some evidence upon which the commission can rely. *State ex rel. Lopez v. Indus. Comm.,* 69 Ohio St.3d 445 (1994); *State ex rel. Taylor v. Indus. Comm.*, 71 Ohio St.3d 582 (1995).

{¶ 38} Here, Dr. Gruenfeld's response to the second query is problematical. The second query asks if relator can "return to his/her former position of employment." In response, Dr. Gruenfeld wrote three sentences. The first sentence opines: "mental health issues likely do prevent him from returning to his former position of employment." The third sentence opines: "his problems with distractibility and motivation inhibit his ability to return to work at this time."

{¶ 39} Some further observations are in order. To begin, it is settled that TTD compensation is payable to one who cannot return to his or her former position of employment due to the industrial injury. *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 40} It is further settled that PTD compensation is payable to one who cannot perform any sustained remunerative employment due to the industrial injury. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).

{¶ 41} The phrase "former position of employment" has a specialized meaning in the Ohio law of workers' compensation. *Ramirez.*

{¶ 42} Thus, Dr. Gruenfeld is ambiguous when he opines "distractibility and motivation inhibit his ability to return to work at this time." Dr. Gruenfeld fails to state that distractibility and motivation inhibit a return to the former position of employment. Rather, the opinion ambiguously suggests that a return to any work, as well as the former position, is inhibited.

{¶ 43} The question is whether Dr. Gruenfeld intended to stray beyond the scope of the second query and to offer an opinion that relator cannot return to any work at this time. It is not the duty of this court to resolve the ambiguity by holding, as the commission suggests, that Dr. Gruenfeld intended to say that distractibility and motivation inhibit his ability to return to his former position of employment.

{¶ 44} Unfortunately, the bureau never asked Dr. Gruenfeld to clarify his ambiguous statement. Because the ambiguity remains unclarified as to the critical issue before the commission in the PTD proceeding, Dr. Gruenfeld's report must be eliminated from further evidentiary consideration unless he subsequently resolves the ambiguity. Thus, the commission abused its discretion when it relied on Dr. Gruenfeld's report in determining the mental component of "residual functional capacity." Ohio Adm.Code 4121-3-34(B)(4).

{¶ 45} As earlier alluded, in response to the third query in his report, Dr. Gruenfeld states:

> Given his current mental health issues, he is unlikely to thrive in a moderate to high stress job setting. He is more likely able to work a job in an office where there is less stress to trigger his depressive based condition.

{¶ 46} While not a model of clarity, in the magistrate's view, Dr. Gruenfeld's response to the third query can be accepted as his opinion that relator "is capable of work in a low stress job" as the SHO determined in her May 17, 2016 order.

{¶ 47} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the May 17, 2016 order of its SHO that denied the PTD application and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).