[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pilarczyk v. Geauga Cty.,* Slip Opinion No. 2019-Ohio-2880.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2880

THE STATE EX REL. PILARCZYK, APPELLEE, *v*. GEAUGA COUNTY ET AL.;
INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pilarczyk v. Geauga Cty.,* Slip Opinion No. 2019-Ohio-2880.]

*Workers' compensation—Permanent total disability—R.C. 4123.58(C)—A medical report that is equivocal is not proper evidence upon which the Industrial Commission can rely to grant or deny permanent-total-disability compensation—Court of appeals' judgment granting limited writ of mandamus affirmed.*

(No. 2018-0728—Submitted April 23, 2019—Decided July 18, 2019.)

APPEAL from the Court of Appeals for Franklin County, No. 17AP-174, 2018-Ohio-1478.

_____

**Per Curiam.**

{¶ 1} The Tenth District Court of Appeals held that appellant, Industrial Commission of Ohio, abused its discretion by relying on a report by a licensed psychologist to deny the request of appellee, Joshua N. Pilarczyk, for permanent-total-disability ("PTD") compensation because the report is equivocal and therefore is not proper evidence to support the commission's determination. The Tenth District issued a limited writ of mandamus ordering the commission to vacate its order, to adjudicate Pilarczyk's request for PTD compensation in conformity with the court's decision, and to enter a new order. We affirm the Tenth District's judgment and deny Pilarczyk's motion for oral argument.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Pilarczyk sustained a back injury in 2002 while working as a maintenance worker for Geauga County. His workers' compensation claims were allowed for various spinal and psychological conditions. He received temporary-total-disability compensation until June 15, 2015. In July 2015, Pilarczyk applied for PTD compensation.

{¶ 3} In 2015, Pilarczyk underwent a series of physical and psychological examinations. In January, his treating orthopedic physician, Dr. Michael Kellis, opined that Pilarczyk's physical conditions would continue indefinitely "without any present indication of recovery," that his injuries prevented him from engaging in "any gainful employment," and that he was permanently and totally disabled as a direct result of his work-related injuries.

{¶ 4} In April, Dr. Kenneth Gruenfeld undertook an independent psychological evaluation of Pilarczyk at the request of the Bureau of Workers' Compensation. The purpose of the evaluation was to obtain Dr. Gruenfeld's opinions regarding the extent of Pilarczyk's psychological disability, the medical necessity and appropriateness of Pilarczyk's treatment, and the potential for Pilarczyk to return to work. In his report, Dr. Gruenfeld responded to six questions

posed by the bureau. In response to question No. 1, Dr. Gruenfeld opined that Pilarczyk had reached maximum medical improvement ("MMI") with respect to his psychological conditions. Question Nos. 2 and 3 and Dr. Gruenfeld's responses to those questions were as follows:

**2. Can the injured worker return to his/her former position of employment? If yes, are there any restrictions or modifications?**

The claimant's mental health issues likely do prevent him from returning to his former position of employment. His problems with depression continue to manifest including problems with focus and motivation. It is believed that his problems with distractibility and motivation inhibit his ability to return to work at this time.

**3. Please provide a summary of any functional limitations solely due to the psychological condition in this claim. In other words, please indicate the type of work the injured worker can perform and supportive rational[e] for your opinion.**

Given his current mental health issues, he is unlikely to thrive in a moderate to high stress job setting. He is more likely able to work a job in an office where there is less stress to trigger his depressive based condition.

(Boldface sic.) In response to question No. 4, Dr. Gruenfeld recommended vocational rehabilitation for Pilarczyk and expressed his opinion that "he may be able to manage a vocational rehabilitation program at this time." In response to question Nos. 5 and 6, Dr. Gruenfeld restated his belief that Pilarczyk had reached MMI and stated that Pilarczyk was no longer obtaining any benefits from

psychotherapy and should complete his treatment goals and finalize the termination of therapy over the ensuing five months.

{¶ 5} After Pilarczyk applied for PTD compensation, the commission referred him to musculoskeletal specialist Dr. Bina Mehta for a physical assessment and to Dr. Joseph P. Pecorelli for a psychological assessment. Both found that Pilarczyk had reached MMI for his allowed conditions. Dr. Mehta opined that based solely on Pilarczyk's allowed *physical* conditions, he "could perform work within the sedentary work capacity category" though he would require breaks and an ambulatory assistive device. Dr. Pecorelli opined, however, that Pilarczyk's "ongoing symptoms of emotional distress * * * would prove to be barriers for any return to gainful employment" and that Pilarczyk was "incapable of work."

{¶ 6} In October 2015, a commission staff hearing officer ("SHO") issued a tentative order granting Pilarczyk's application for PTD compensation based on Dr. Pecorelli's report. The bureau submitted a notice of appeal, arguing that PTD compensation should be denied because Dr. Gruenfeld's report had stated that Pilarczyk was likely able to work in an office job and that he could participate in vocational rehabilitation. The bureau also stated that Pilarczyk had declined rehabilitation.

{¶ 7} In June 2016, a different SHO issued an order denying Pilarczyk's application for PTD compensation based on the reports of Drs. Mehta and Gruenfeld and on nonmedical factors. The order did not mention Dr. Pecorelli's report or his conclusion that Pilarczyk was incapable of work. It instead stated with respect to Pilarczyk's psychological condition, "Dr. Gruenfeld opines Injured Worker is capable of work in a low stress job." Pilarczyk twice moved for reconsideration, arguing in part that the commission's reliance on Dr. Gruenfeld's report was improper because the report is equivocal and "internally inconsistent." The commission denied both requests.

{¶ 8} In March 2017, Pilarczyk filed a complaint for a writ of mandamus in the Tenth District. He claimed that the commission had abused its discretion by denying his request for PTD compensation in reliance on Dr. Gruenfeld's report, reiterating his assertions that the report is equivocal and that equivocal medical opinions do not constitute evidence on which the commission may rely. Pilarczyk specifically argued that Dr. Gruenfeld's report does not unequivocally state that Pilarczyk *can* work or that he *can* engage in vocational rehabilitation and that even if the court found that Dr. Gruenfeld's report *does* state that he could work, the report is contradictory because it also says that his "problems with distractibility and motivation inhibit his ability to return to work at this time." The commission countered that the report is not equivocal.

{¶ 9} The Tenth District's magistrate agreed with Pilarczyk that the commission abused its discretion by denying PTD compensation based on Dr. Gruenfeld's report. Although the magistrate concluded that Dr. Gruenfeld's response to the third question could be accepted as Dr. Gruenfeld's opinion that Pilarczyk is capable of working in a low-stress job, the magistrate found that Dr. Gruenfeld's report should be excluded as evidence because Dr. Gruenfeld responded ambiguously to question No. 2. Dr. Gruenfeld's response to question No. 2 states both that Pilarczyk's mental-health issues "prevent him from returning to his *former position of employment*" and that "his problems with distractibility and motivation inhibit his ability to *return to work* at this time." (Emphasis added.) The magistrate noted that "former position of employment" has a specialized meaning in workers' compensation law and found that it was unclear whether the phrase "return to work" referred solely to a return to Pilarczyk's former position or "whether Dr. Gruenfeld intended to stray beyond the scope of the second query and to offer an opinion that [Pilarczyk] cannot return to any work at this time." 2018-Ohio-1478, ¶ 41-43. The magistrate stated that it was not the court's role to resolve this ambiguity and determined that "Dr. Gruenfeld's report must be eliminated from

further evidentiary consideration unless he subsequently resolves the ambiguity." *Id*. at ¶ 44.

{¶ 10} The Tenth District overruled the commission's objection to the magistrate's decision, adopted the decision, and issued a writ of mandamus ordering the commission to vacate its order denying PTD compensation and to enter a new order adjudicating Pilarczyk's application in conformity with the court's decision. The commission appealed the Tenth District's judgment.

## II. ANALYSIS

{¶ 11} The commission is the exclusive fact-finder in workers' compensation matters; a court's role in adjudicating a mandamus complaint is to determine whether the commission abused its discretion by entering an order that is not based on some evidence in the record. *See State ex rel. Manpower of Dayton, Inc. v. Indus. Comm.*, 147 Ohio St.3d 360, 2016-Ohio-7741, 65 N.E.3d 751, ¶ 11 (noting that if the commission's order is supported by "some evidence," a court must uphold the order). The question before the commission was whether Pilarczyk was capable of "engaging in sustained remunerative employment utilizing the employment skills that [he] has or may reasonably be expected to develop." R.C. 4123.58(C)(2).

{¶ 12} In ultimately concluding that Pilarczyk was capable of sustained remunerative employment, the commission relied on Dr. Gruenfeld's report. The SHO did not identify any other evidence in support of the finding that Pilarczyk is psychologically capable of engaging in sustained remunerative employment. Pilarczyk, however, claims that Dr. Gruenfeld's report is equivocal on the issue whether he is psychologically capable of work and, therefore, does not constitute "some evidence" in support of the commission's determination. The sole issue before this court is whether Dr. Gruenfeld's report constitutes "some evidence" in support of the commission's determination that Pilarczyk could engage in sustained remunerative employment despite his psychological condition.

6

### A. *Equivocal medical opinions*

{¶ 13} Equivocal medical opinions "are of no probative value" and, thus, "are not evidence." *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657, 640 N.E.2d 815 (1994). "[E]quivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *Id.*

{¶ 14} Ambiguous statements are inherently different from statements that are repudiated, contradictory or uncertain. Repudiated, contradictory or uncertain statements reflect that "the doctor is not sure what he means," and they are therefore "inherently unreliable." *Id.* An ambiguous statement, on the other hand, reflects not that the doctor is unsure what he means but that the doctor "did not effectively *convey* what he meant." (Emphasis added.) *Id.* Ambiguous statements are not inherently unreliable, and they may be rehabilitated as evidence by clarification. *Id.*

### B. *Ambiguity in Dr. Gruenfeld's report*

{¶ 15} A statement is ambiguous if it is "susceptible of more than one reasonable interpretation." *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40, 741 N.E.2d 121 (2001). The Tenth District discerned ambiguity in Dr. Gruenfeld's response to question No. 2 in his report. Question No. 2 asked whether Pilarczyk could return to his "former position of employment." Dr. Gruenfeld's response included three sentences. In the first sentence, he states that "mental health issues likely do prevent him from returning to his former position of employment." His response then continues, "His problems with depression continue to manifest including problems with focus and motivation. It is believed that his problems with distractibility and motivation inhibit his ability to return to work at this time." The magistrate noted that Dr. Gruenfeld did not state that distractibility and motivation inhibit Pilarczyk's return only to his former position of employment: "Rather, the opinion ambiguously suggests that a return to any

work, as well as the former position, is inhibited." 2018-Ohio-1478 at ¶ 42. Because Dr. Gruenfeld's statement that Pilarczyk's psychological conditions "inhibit his ability to return to work at this time" is susceptible of more than one reasonable interpretation, we agree with the Tenth District that Dr. Gruenfeld's response is ambiguous.

### C. Role of the court

{¶ 16} The Tenth District's conclusion that it was not the court's duty to resolve the ambiguity in Dr. Gruenfeld's report comports with this court's traditional refusal to second-guess the medical expertise of physicians in workers' compensation cases. *State ex rel. Young v. Indus. Comm.*, 79 Ohio St.3d 484, 487, 683 N.E.2d 1145 (1997); *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449, 633 N.E.2d 528 (1994). As a corollary to this deference to medical expertise, a court should be reluctant to require the commission to make a decision based on the court's own speculation about what a medical expert meant to say.

{¶ 17} In a 2005 PTD case, the Tenth District expressly rejected a magistrate's proposed reconciliation of contradictory terms similar to those at issue in this case. *State ex rel. Hursey v. Indus. Comm.*, 10th Dist. Franklin No. 04AP-292, 2005-Ohio-198. In *Hursey*, the physician's report stated,

> "[The claimant's] condition is one which would preclude his ever returning to work activity given the severity of his problems at this point in time. In that this has continued since the early 90's, there does not appear to be any real likelihood of considerable improvement such that he could ever return to his work activity. He would be capable only of sedentary types of work activity in a strength rating."

*Id*. at ¶ 3, quoting the physician's report. The magistrate had posited that these passages—which stated both that the claimant's condition precluded his "ever returning to work activity" and that the claimant would be capable of sedentary work—could be reconciled by reading "work activity" as referring only to the claimant's former occupation as a police officer and not as referring to "any" work activity. *Id*. at ¶ 4-5, 23. But the Tenth District rejected that approach because it "would necessitate adding words and applying meaning that is not apparent on the face of the report." *Id*. at ¶ 5. The court concluded that "a plain reading of the wording used by [the physician] renders his opinion conflicting and ambiguous." *Id*.

{¶ 18} Dr. Gruenfeld's report presents the same alleged ambiguity—whether "return to work" as used by Dr. Gruenfeld in his response to question No. 2 means "return to his former position" or "return to any work." Unlike in *Hursey*, however, Dr. Gruenfeld was responding to a question that specifically inquired about Pilarczyk's ability to return to his former position of employment.

{¶ 19} The commission contends that the court must read the third sentence of Dr. Gruenfeld's response to question No. 2 in the context of the question asked and, thus, as addressing only whether Pilarczyk can return to his former position of employment. Specifically, it asserts that the third sentence—"It is believed that his problems with distractibility and motivation inhibit his ability to return to work at this time"—provides a rationale for Dr. Gruenfeld's conclusion in the first sentence—"The claimant's mental health issues likely do prevent him from returning to his former position of employment"—and is therefore not ambiguous. But we conclude that reading "return to work" as "return to his former position" does not fully make sense in the context of question No. 2. The commission's interpretation makes Dr. Gruenfeld's first and third sentences in response to question No. 2 say practically the same thing—a seemingly unnecessary duplication.

**{¶ 20}** As in *Hursey*, adopting the commission's position would require us to assign a meaning not apparent from the face of the report. As we explained above, this would in turn require the commission to make a decision based on our speculation rather than on the clear opinion of the medical expert.

**{¶ 21}** Even were we permitted to attempt to reconcile the ambiguity in Dr. Gruenfeld's report, that endeavor would be complicated by his response to question No. 3, which states that Pilarczyk "is unlikely to thrive in a moderate to high stress job setting" but that he "is more likely able to work a job in an office where there is less stress." While calling it "not a model of clarity," the magistrate found that Dr. Gruenfeld's response "can be accepted" as his opinion that Pilarczyk can work in a low-stress job. 2018-Ohio-1478 at ¶ 46. We disagree. Dr. Gruenfeld did not state that Pilarczyk *can* work or even that he is *likely* able to work—only that he is *more likely* able to work in a low-stress job than in a moderate- or high-stress job, after having just stated that even working in a moderate-stress job was *unlikely*. The response to question No. 3 therefore is also ambiguous. While it is not clear that Dr. Gruenfeld was even attempting to offer a firm opinion on whether he believed that Pilarczyk can work, it is possible that he believed that Pilarczyk is not psychologically capable of any work.

**{¶ 22}** In *State ex rel. Paragon v. Indus. Comm.*, 5 Ohio St.3d 72, 448 N.E.2d 1372 (1983), an examining physician in one of the medical reports at issue first stated that the injured worker was totally disabled and then the physician stated that he was uncertain, *id.* at 75. The physician also stated both that he did not believe that the injured worker would ever return to work and that if the worker were "motivated," he could "probably" work, *id.* at 75-76; but the physician did not explain what he meant by "motivated" or whether the lack of motivation was the result of an allowed condition, *id.* at 76. This court concluded that the report was not evidence upon which the commission could rely to grant or deny the claimant's PTD application. *Id.* The relativity and ambiguity in Dr. Gruenfeld's report here

10

lead us to conclude that as in *Paragon*, the report is, "at best, equivocal." *Paragon* at 76. Accordingly, the commission may rely on Dr. Gruenfeld's report only if Dr. Gruenfeld clarifies his medical opinion regarding Pilarczyk's ability to engage in sustained remunerative employment.

### D. Pilarczyk has not shown a need for oral argument

{¶ 23} In a direct appeal such as this, the granting of a request for oral argument is subject to this court's discretion. S.Ct.Prac.R. 17.02(A). We typically do not grant a request for oral argument unless the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals. *See State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm.*, 148 Ohio St.3d 212, 2016-Ohio-7988, 69 N.E.3d 728, ¶ 23. Pilarczyk's motion for oral argument does not convincingly demonstrate that any of the above factors are present. We therefore deny the motion.

### III. CONCLUSION

{¶ 24} For these reasons, we affirm the judgment of the court of appeals and deny the motion for oral argument.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., dissenting.**

{¶ 25} This appeal revolves around the opinion of Dr. Kenneth Gruenfeld regarding the ability of appellee, Joshua N. Pilarczyk, to perform sustained remunerative employment in relation to Pilarczyk's claim for permanent-total-disability ("PTD") compensation. Because Dr. Gruenfeld's report is not equivocal or ambiguous, it constitutes some evidence to support the Industrial Commission's

11

rejection of Pilarczyk's application for PTD benefits. I would therefore reverse the judgment of the Tenth District Court of Appeals and deny the writ of mandamus sought by Pilarczyk.

{¶ 26} It is important in this case to recognize the nature and purpose of Dr. Gruenfeld's report. In his report following his April 28, 2015 examination of Pilarczyk, Dr. Gruenfeld wrote, "Mr. Pilarczyk was referred to [me] for a psychological assessment by Ohio Bureau of Worker's Compensation to obtain [my] opinion regarding the extent of his psychological disability and the medical necessity and appropriateness of his current treatment and/or potential to return to work." Pilarczyk was receiving temporary-total-disability ("TTD") compensation at the time of the appointment. TTD compensation ceases when an employee has reached maximum medical improvement ("MMI"). R.C. 4123.56(A). MMI "is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures." Ohio Adm.Code 4121-3-32. After an MMI determination, a claimant may apply for PTD compensation. Dr. Gruenfeld's report concerned whether Pilarczyk had achieved MMI; it further concerned factors relevant to a potential claim for PTD compensation. Pilarczyk's TTD compensation was terminated on June 15, 2005. Pilarczyk later submitted a claim for PTD benefits on July 20, 2015.

{¶ 27} PTD compensation is awarded when "[t]he impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop." R.C. 4123.58(C). Ohio Adm.Code 4121-3-34(D)(2) contains guidelines for the adjudicator to consider in deciding whether to award PTD compensation. There are separate branches of consideration depending on whether the claimant might be able to perform some type of remunerative employment: If the impairment prohibits

12

the injured worked from returning to the former position of employment and also "prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled" and no further finding is required. Ohio Adm.Code 4121-3-34(D)(2)(a). But

> [i]f, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment *but may be able to engage in sustained remunerative employment*, the non-medical factors shall be considered by the adjudicator.

(Emphasis added.) Ohio Adm.Code 4121-3-34(D)(2)(b).

{¶ 28} These nonmedical factors are known as the *Stephenson* factors, first set forth by this court in *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 173, 509 N.E.2d 946 (1987), in which we held that it is "necessary that the commission look at the claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record in making its determination of" PTD. Depending on those factors, even a claimant who is physically capable of some remunerative employment may still be awarded PTD compensation.

{¶ 29} Based on Dr. Gruenfeld's report, the commission determined that although Pilarczyk was unable to return to his former position of employment, he may be able to engage in sustained remunerative employment. The commission then applied the *Stephenson* factors in reaching its ultimate conclusion that a PTD award was not appropriate at that time.

{¶ 30} The majority ultimately concludes that Dr. Gruenfeld's report could not be properly relied upon as "some evidence" by the commission to determine

that Pilarczyk may be able to engage in sustained remunerative employment because the report is " 'at best, equivocal,' " majority opinion at ¶ 22, quoting *State ex rel. Paragon v. Indus. Comm.*, 5 Ohio St.3d 72, 76, 448 N.E.2d 1372 (1983). Equivocal medical opinions "are of no probative value" and, therefore, "are not evidence." *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657, 640 N.E.2d 815 (1994). "[E]quivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *Id*.

{¶ 31} Here, the majority says that Dr. Gruenfeld's opinion is ambiguous. Ambiguous statements "are considered equivocal only while they are unclarified." *Eberhardt* at 657. Ambiguous statements "merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently unreliable. Such statements do not relate to the doctor's position, but to his communication skills." *Id.*; *see Phipps v. Internatl. Paper Co.*, 12th Dist. Clinton No. CA2013-02-003, 2013-Ohio-3994, ¶ 14-15.

{¶ 32} First, Dr. Gruenfeld's opinion regarding Pilarczyk's ability to engage in remunerative employment is not ambiguous and, even if it were, he clarified any possible ambiguity through his answers to the other questions in his report. His report—in which he answers a series of questions posed to him by the bureau—follows the structure that an evaluator of a PTD claim would follow. That is, the first inquiry is whether the claimant has reached MMI. Second, if the claimant has reached MMI, does his condition prevent him from returning to his former position of employment? Third, if he cannot return to his former position, is he capable of engaging in sustained remunerative employment in some other type of work? Fourth, are there rehabilitation options available?

{¶ 33} In his answer to question No. 1 posed by the bureau, Dr. Gruenfeld determined that Pilarczyk had achieved MMI. At the center of this case is what Dr.

Gruenfeld meant by his answer to question No. 2 in his report. The question and his answer are as follows:

> **2. Can the injured worker return to his/her former position of employment? If yes, are there any restrictions or modifications?**
>
> The claimant's mental health issues likely do prevent him from returning to his former position of employment. His problems with depression continue to manifest including problems with focus and motivation. It is believed that his problems with distractibility and motivation inhibit his ability to return to work at this time.

(Boldface sic.)

{¶ 34} The first sentence of Dr. Gruenfeld's answer responds to the initial question asked, and the two succeeding sentences explain the answer. The first sentence states that mental-health issues keep Pilarczyk from being able to return to his former position of employment. The second sentence explains what those mental-health issues are: depression, leading to problems with focus and motivation. The third sentence ties those symptoms to Pilarczyk's inability to return to his former job. The answer follows this logical format: Mental-health issues keep Pilarczyk from returning to his job. Here are the mental-health issues. Here's why those prevent him from returning to his job. Only if the reader assumes that Dr. Gruenfeld was answering an unasked question can the answer be considered ambiguous. The majority leaps to the conclusion that Dr. Gruenfeld chose to open a whole different, unasked type of inquiry—whether Pilarczyk could perform *any* remunerative employment—with his third sentence, rather than completing his logical thought process as to question No. 2. Dr. Gruenfeld was

answering only the question that is asked, the threshold question of a PTD inquiry—can the claimant return to his former job?

{¶ 35} Whether the claimant is capable of *any* remunerative work is the next-level inquiry in a PTD claim, and that inquiry was raised in the next question posed by the bureau and answered in Dr. Gruenfeld's report. Again, the questions addressed in the report follow the structure of a PTD evaluation. Even assuming ambiguity in his answer to question No. 2, the answer to question No. 3 clears up any doubt that Dr. Gruenfeld's opinion is that Pilarczyk is able to do some remunerative work. The question and answer are as follows:

> **3. Please provide a summary of any functional limitations solely due to the psychological condition in this claim. In other words, please indicate the type of work the injured worker can perform and supportive rational[e] for your opinion.**
>
> Given his current mental health issues, he is unlikely to thrive in a moderate to high stress job setting. He is more likely able to work a job in an office where there is less stress to trigger his depressive based condition.

(Boldface sic.)

{¶ 36} Here, Dr. Gruenfeld responds to two queries posed by the bureau. First, he summarizes the functional limitations caused solely due to the psychological condition in the claim: The key functional limitation, given Pilarczyk's current mental-health issues, is that he is unlikely to thrive in a moderate- to high-stress job setting. With that determined, Dr. Gruenfeld moves on to respond to the second query. He responds to the first part of that query— which asks him to give his opinion of the type of work Pilarczyk can perform—by

responding that Pilarczyk is more likely able to work in a job in an office. After that response, he moves on to the second part of the second query—which asks him to state the supportive rationale for his opinion—by answering that there is less stress in an office setting that would trigger Pilarczyk's depressive-based condition. Therefore, Dr. Gruenfeld concludes that Pilarczyk's psychological condition does not prevent him from performing some type of remunerative employment, i.e., Pilarczyk's condition does not foreclose him from the ability to work at *any* job.

{¶ 37} The majority does not set forth question No. 4 posed by the bureau in Dr. Gruenfeld's report or his complete answer:

> **4.** **Are there any recommendations for vocational rehabilitation?**
>
> Yes. Vocational rehabilitation is recommended at this time. Given his current intelligence, ability to communicate his needs and his responsibility in going to doctor appointments, it is believed that he may be able to manage a vocational rehabilitation program at this time.

(Boldface sic.)

{¶ 38} Of what worth is vocational rehabilitation for someone who is unable to perform any remunerative work? Here, Dr. Gruenfeld responds that Pilarczyk is amenable to vocational rehabilitation—that is, that Pilarczyk's psychological condition does not prevent him from working. "[T]here are some situations where an *award* of [PTD] benefits may properly be based on medical factors alone." (Emphasis sic.) *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38, 40, 573 N.E.2d 60 (1991). "It would serve no practical purpose for the commission to consider nonmedical factors in extreme situations where medical factors alone preclude sustained remunerative

employment, since nonmedical factors will not render the claimant any more or less physically able to work." *Id.* But when there is not a total physical inability to perform work, nonmedical factors such as the claimant's amenability to rehabilitation are relevant, and Dr. Gruenfeld's recommendation of vocational rehabilitation indicates that he believes that Pilarczyk is capable of remunerative employment. The ultimate question before the commission was whether Pilarczyk was capable of "engaging in sustained remunerative employment utilizing the employment skills that [he] has *or may reasonably be expected to develop.*" (Emphasis added.) R.C. 5123.58(C). Dr. Gruenfeld's recommendation for vocational rehabilitation is an acknowledgement that Pilarczyk may reasonably be expected to develop employment skills leading to remunerative employment.

{¶ 39} "An award of [PTD] compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility for re-employment." *State ex rel. B.F. Goodrich Co. v. Indus. Comm.*, 73 Ohio St.3d 525, 529, 653 N.E.2d 345 (1995). PTD compensation is "compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed." *State ex rel. Wilson v. Indus. Comm.*, 80 Ohio St.3d 250, 253, 685 N.E.2d 774 (1997).

{¶ 40} Read as a whole, Dr. Gruenfeld's report supports the conclusion that Pilarczyk is not foreclosed from finding remunerative employment. Dr. Gruenfeld's answer to question No. 2 posed by the bureau was limited to the question asked, and he merely concluded that Pilarczyk could not return to his particular prior job. And even assuming that Dr. Gruenfeld's answer to question No. 2 is ambiguous standing alone, his answers to the subsequent questions establish that his answer to question No. 2 is limited to the particular question asked and that it is his opinion that Pilarczyk is capable of some other remunerative employment.

{¶ 41} Therefore, Dr. Gruenfeld's report does constitute some evidence that Pilarczyk is capable of some remunerative employment, and the commission properly moved on from that determination to consider the *Stephenson* factors before denying Pilarczyk's claim.

{¶ 42} Accordingly, I would reverse the judgment of the Tenth District, vacate the writ of mandamus granted by that court, and deny the requested writ in its entirety.

DEWINE, J., concurs in the foregoing opinion.

_____

Dworken & Bernstein Co., L.P.A., Stacy M. Callen, and Patrick J. Perotti, for appellee.

Dave Yost, Attorney General, and Jacquelyn McTigue, Assistant Attorney General, for appellant.

_____