[Cite as *State ex rel. Forward Air Corp. v. Indus. Comm.*, 2025-Ohio-5737.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Forward Air Corporation, | : | |
| Relator, | : | No. 24AP-223 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Industrial Commission et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 23, 2025

**On brief:** *Reminger Co., L.P.A., Ronald A. Fresco*, and *Troy A. Duffy*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Anna Isupova*, for respondent, Industrial Commission of Ohio.

**On brief:** *Nager, Romaine & Schneiberg Co., L.P.A.*, and *Leah Vanderkaay*, for respondent, D.W. Kincer.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DINGUS, J.

{¶ 1} Relator, Forward Air Corporation ("Forward Air"), initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting respondent, D.W. Kincer, temporary total disability compensation, and to issue an order denying such compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate

determined some evidence supported the commission's temporary total disability compensation order. Thus, the magistrate recommends we deny Forward Air's request for a writ of mandamus.

{¶ 3} Forward Air has filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). In its objections, Forward Air generally argues the magistrate erred in finding some evidence in support of the commission's finding of new and changed circumstances and the award of temporary total disability compensation. More particularly, Forward Air contends the magistrate erred in finding the following to be some evidence supporting the commission's orders: January 26, 2023 operative report of Amol Soin, M.D.; Dr. Soin's September 27, 2023 medical questionnaire; and Dr. Soin's September 27, 2023 office note.

{¶ 4} Before addressing Forward Air's objections, we provide some general background. In 2018, Kincer suffered an injury in the course of and arising out of his employment with Forward Air, a self-insuring employer. Forward Air certified the claim, which was ultimately allowed for the conditions of displaced closed fracture of first metatarsal of the left foot, crushing injury of the left foot, left peroneal neuropathy, and left tibial neuropathy. In April 2019, Forward Air approved a request in the claim for the placement of a spinal cord stimulator. In June 2020, the commission issued an order finding Kincer had reached maximum medical improvement and therefore terminated his temporary total disability compensation.

{¶ 5} In August 2022, a request was submitted in the claim for the approval of a "spinal cord stimulator lead revision under fluoroscopy." (Stip. at 162.) On November 3, 2022, a commission district hearing officer issued an order granting this request upon finding that the requested treatment was "medically necessary and appropriate for the allowed conditions in the claim" and "reasonably related" to Kincer's May 2018 injury. (Stip. at 167.) Forward Air administratively appealed the approval order but later withdrew that challenge. On January 26, 2023, Dr. Soin performed the spinal cord stimulator lead revision procedure.

{¶ 6} After the January 26, 2023 surgery, Kincer again requested, and was granted, temporary total disability compensation. A commission staff hearing officer

found that new and changed circumstances existed, and that Kincer was temporarily and totally disabled due to the industrial injury. The staff hearing officer based the decision on the following: (1) the February 2, April 10, June 7, and August 28, 2023 physician's report of work ability ("MEDCO-14") forms completed by Derek Black, D.C.; (2) the September 27, 2023 medical questionnaire completed by Dr. Soin; (3) the September 27, 2023 office notes of Dr. Soin; (4) the January 26, 2023 operative report; and (5) the June 12, 2020 and November 3, 2022 commission orders. The commission refused Forward Air's appeal, and the matter is now before this court in mandamus.

{¶ 7} Arguing in support of the requested writ before the magistrate, Forward Air challenged the commission's reliance on the specific evidence delineated above in exercising continuing jurisdiction based on new and changed circumstances, and in reinstating Kincer's temporary total disability compensation. The magistrate thoroughly analyzed Forward Air's arguments concerning each of these pieces of evidence, and we fully concur in that analysis. We address an issue, however, that is the central focus of Forward Air's objections, and that Forward Air contends the magistrate did not fully and properly analyze.

{¶ 8} Forward Air argues the magistrate's review was deficient because he did not expressly acknowledge or adequately consider in his analysis a procedure note in Dr. Soin's January 26, 2023 operative report, referring to " '[m]edical [n]ecessity.' " (Relator's Reply Brief at 6, quoting Stip. at 195.) This note states that Kincer " 'has a history of radiculopathy-type pain that travels down their affected extremity. This pain we are treating is suggestive of radiculopathy as documented by axial location with radiculopathy and documented suspicion nerve root irritation causing the radiculopathy.' " *Id.*, quoting Stip. at 195. Forward Airs asserts that, in isolation, this note indicates the surgery was only for radiculopathy, a non-allowed condition. But, as noted by the magistrate, the operative report provided preoperative and postoperative diagnoses that included the non-allowed condition of radiculopathy and the allowed condition of peroneal neuropathy. Even so, Forward Air argues that the procedure note, together with the preoperative and postoperative diagnoses in the operative report, was ambiguous as to the reason for the surgery, and that this ambiguity was not clarified in other evidence. Consequently, Forward Air reasons that, because of the ambiguity, this evidence did not demonstrate that

an allowed condition was an independent basis for the surgery, and therefore the consequences of the surgery cannot be a basis for reinstatement of temporary total disability compensation.

{¶ 9} We reject this reasoning. As the magistrate noted, " '[t]he mere presence of a nonallowed condition in a claim for [temporary total disability compensation] does not in itself destroy the compensability of the claim,' " but the claimant " 'must meet [his] burden of showing that an allowed condition independently caused the disability.' " (Appended Mag.'s Decision at ¶ 61, quoting *State ex rel. Bradley v. Indus. Comm.*, 1997-Ohio-48, ¶ 15.) *See also State ex rel. Omni Manor, Inc. v. Indus. Comm.*, 2019-Ohio-2521, ¶ 13 (10th Dist.) ("That the surgical procedure requested may ultimately provide relief to . . . non-allowed conditions does not render the surgical procedure any less independently necessary to treat the allowed condition."). And as the magistrate further noted, "[t]o the extent that Dr. Soin's diagnoses in the operative report generated ambiguity regarding whether the surgery was performed due to nonallowed or disallowed conditions, Dr. Soin's medical questionnaire constitutes some evidence on which the commission could rely for clarification." (Appended Mag.'s Decision at ¶ 71, citing *State ex rel. Lopez v. Indus. Comm.*, 1994-Ohio-458.) In the questionnaire completed on September 27, 2023, Dr. Soin unequivocally answered "yes" to the question of whether Kincer was "temporarily totally disabled from employment from [January 26, 2023] onward to the present (and continuing) due to the allowed conditions in this claim?" (Stip. at 271.) Although this response does not directly address the basis of the procedure, it is supportive of a finding that it clarified Dr. Soin's opinion that an allowed condition was an independent basis for the procedure, which, according to Dr. Soin, caused a substantive change in Kincer's condition because he had "to recover from the invasive procedure." (Stip. at 271.)

{¶ 10} More fundamentally, we find that Forward Air is essentially attempting to use an alleged ambiguity in Dr. Soin's January 26, 2023 operative report, concerning the basis for the January 26, 2023 surgery, as a means to indirectly and untimely, challenge the commission's order authorizing the surgery based on allowed conditions. As set forth above, a commission district hearing officer, in a November 3, 2022 order, specifically approved the surgery as "medically necessary and appropriate for the allowed conditions in the claim" and "reasonably related" to Kincer's May 2018 injury. (Stip. at 167.) This

approval was based on the C-9 Form completed by Dr. Soin on August 31, 2022, and Dr. Soin's August 23, 2022 progress notes. Despite Forward Air withdrawing its administrative appeal of that order, and the surgery being performed as approved for the allowed conditions, Forward Air now asserts—pointing to a procedure note in Dr. Soin's January 26, 2023 operative report—that the record fails to contain some evidence that the surgery was medically necessary for an allowed condition, and therefore the disability after the surgery was not independently caused by an allowed condition. While the January 26, 2023 procedure may have also addressed a nonallowed condition, this circumstance does not negate the approved, and administratively settled, basis for the surgery—to address allowed conditions in the claim.

{¶ 11} Therefore, like the magistrate, we find that any ambiguity in Dr. Soin's operative report relating to whether the January 26, 2023 surgery was performed due to an allowed condition is clarified by other evidence. Additionally, this issue was effectively resolved by the unchallenged November 3, 2022 commission district hearing officer order. For these reasons, we overrule Forward Air's objections to the magistrate's decision.

{¶ 12} Following our independent review of this matter, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny Forward Air's request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied*.

BEATTY BLUNT and MENTEL, JJ., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Forward Air Corporation,     :

      Relator,     :

v.     :                         No.  24AP-223

Ohio Industrial Commission et al.,     :          (REGULAR CALENDAR)

      Respondents.     :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 30, 2025

---

*Reminger Co.*, *L.P.A.*, *Ronald A. Fresco*, and *Troy A. Duffy*, for relator.

*Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

*Nager*, *Romaine & Schneiberg Co.*, *L.P.A.*, and *Leah Vanderkaay*, for respondent D.W. Kincer.

---

IN MANDAMUS

{¶ 13} In 2020, Respondent D.W. Kincer was found to have reached maximum medical improvement with regard to the allowed conditions in his workers' compensation claim and, as a result, ceased receiving temporary total disability compensation. After an approved surgery in 2023, Kincer again requested and was granted temporary total disability compensation by respondent Industrial Commission of Ohio ("commission").

{¶ 14} In this matter, Relator Forward Air Corporation ("Forward Air") requests a writ of mandamus ordering the commission to (1) vacate its orders granting Kincer temporary total disability compensation and (2) issue an order denying such

compensation. For the following reasons, the magistrate recommends denying Forward Air's request for a writ of mandamus.

## I. Findings of Fact

{¶ 15} 1. Kincer suffered an injury in the course of and arising out of his employment with Forward Air, a self-insuring employer, on May 9, 2018.

{¶ 16} 2. Forward Air certified the claim, which was ultimately allowed for the conditions of displaced closed fracture of first metatarsal of the left foot, crushing injury of the left foot, left peroneal neuropathy, and left tibial neuropathy.

{¶ 17} 3. In a Bureau of Workers' Compensation ("bureau") request for medical service reimbursement or recommendation for additional conditions for industrial injury or occupational disease ("C-9") form dated April 30, 2019, a request for spinal cord stimulator placement was approved by Forward Air. (Stip. at 292.)

{¶ 18} 4. On June 12, 2020, a commission staff hearing officer issued an order finding that Kincer's allowed conditions had reached maximum medical improvement.[1] As a result, the staff hearing officer ordered that temporary total disability compensation be paid through April 20, 2020, and then terminated.

{¶ 19} 5. On November 6, 2020, Amol Soin, M.D., performed a trigger point injection procedure on Kincer. Dr. Soin's treatment notes included assessments related to the allowed conditions of displaced fracture of first metatarsal bone, left foot; and crushing injury of left foot. Dr. Soin reported that examination of Kincer's extremities revealed that complex regional pain syndrome symptoms were present "[c]onsistent with sympathetically mediated pain." (Stip. at 11.) In addition to references to the allowed conditions,[2] the procedure notes reflect preoperative and postoperative diagnoses of "[f]ibromyalgia, myofascial pain, myositis unspecified." *Id*. at 12.

{¶ 20} 6. On November 12, 2020, a staff hearing officer issued an order denying a C-9 request from Dr. Soin for lumbar epidural steroid injections. Listing all of the allowed conditions in the claim, the staff hearing officer found the "requested lumbar epidural

---

[1] The June 12, 2020 order listed the allowed conditions of displaced closed fracture of first metatarsal bone, left foot, and crushing injury of left foot. No other conditions were listed.

[2] Under "preoperative diagnosis," Dr. Soin stated: "Additional diagnosis for this patient are noted in the assessment section of this note and in the problem list section. I would like to reference those diagnosis codes as part of this note." (Stip. at 12.)

steroid injection is not medically reasonable or appropriate for the treatment of the allowed conditions." (Stip. at 6.)

{¶ 21} 7. Kincer was seen by Dr. Soin several times in December 2020 for follow-up appointments and two additional trigger point injection procedures based on the same pre- and postoperative diagnoses as in the November 6, 2020 procedure. Dr. Soin also continued to note the presence of complex regional pain syndrome symptoms.

{¶ 22} 8. On February 19, 2021, a staff hearing officer issued an order denying a C-9 request from Dr. Soin for medical service reimbursement for an epidural steroid injection at L5-S1. Listing all of the allowed conditions in the claim, the staff hearing officer found the "requested [epidural steroid injection] is not medically reasonable or appropriate for the treatment of the allowed conditions." (Stip. at 41.)

{¶ 23} 9. Between March 8 and September 29, 2021, Dr. Soin performed multiple radiofrequency ablation procedures and additional trigger point injection procedures. Dr. Soin continued to note the presence of complex regional pain syndrome symptoms or sympathetically mediated pain. Notes from the procedures on March 31, April 30, June 4, July 26, and September 29, 2021 reflected the pre- and postoperative diagnoses of "mononeuritis unspecified, neuritis, neuralgia, chronic pain syndrome." (Stip. at 53, 61, 69, 77, 96.) Notes from the procedures on September 15 and 22, 2021 reflected the pre- and postoperative diagnoses of "[f]ibromyalgia, myofascial pain, myositis unspecified." (Stip. at 86, 90.)

{¶ 24} 10. On November 23, 2021, a staff hearing officer issued an order denying Kincer's request for the allowance of the additional condition of complex regional pain syndrome left lower extremity. The staff hearing officer found the disallowed condition was "not causally related" to Kincer's allowed May 9, 2018 industrial injury. (Stip. at 102.)

{¶ 25} 11. Kincer's appeal of the November 23, 2021 order was refused on December 14, 2021. There is no evidence in the record that the additional condition of complex regional pain syndrome left lower extremity was allowed through further appeal or action.

{¶ 26} 12. Multiple additional radiofrequency ablation or trigger point injection procedures were performed by Dr. Soin between November 24, 2021 and June 20, 2022. Dr. Soin continued to note sympathetically mediated pain. In addition to references to the

allowed conditions, notes from the procedures on November 24, 2021, December 20, 2021, January 19, 2022, April 1, 2022, and May 9, 2022 reflected pre- and postoperative diagnoses of "[f]ibromyalgia, myofascial pain, myositis unspecified." (Stip. at 109, 117, 126, 134, 143.) Notes from the radiofrequency ablation procedure on June 20, 2022 reflected pre- and postoperative diagnoses of "mononeuritis unspecified, neuritis, neuralgia, chronic pain syndrome." (Stip. at 156.)

{¶ 27} 13. Kincer was examined by Dr. Soin at a follow-up appointment on August 23, 2022. In the office notes from this appointment, Dr. Soin again noted symptoms consistent with sympathetically mediated pain. In the assessment section, Dr. Soin listed the allowed conditions in the claim and made the following notes:

> - spinal cord [stimulator] – lead fracture
> - he was tried to be reprogrammed
> - no help
> -will revise

(Stip. at 152.)

{¶ 28} 14. Dr. Soin submitted a C-9 request dated August 31, 2022, seeking approval of a "spinal cord stimulator lead revision under fluoroscopy." (Stip. at 162.) The treating diagnosis for this request listed diagnosis codes corresponding to the allowed conditions of displaced closed fracture of first metatarsal bone, left foot, and crushing injury of left foot. *Compare* stip. at 287 *with* stip. at 160.

{¶ 29} 15. On November 3, 2022, a commission district hearing officer issued an order granting the C-9 request for spinal cord stimulator lead revision based on the finding that the requested treatment was "medically necessary and appropriate for the allowed conditions in the claim" and "reasonably related" to Kincer's May 9, 2018 injury. (Stip. at 167.)

{¶ 30} 16. In a separate order issued on November 3, 2022, a staff hearing officer affirmed the denial of a C-9 request from Dr. Soin for a ketamine infusion. Listing the allowed and disallowed conditions in the claim, the staff hearing officer found the requested treatment was "not medically necessary and appropriate for the allowed conditions in the claim," but instead was "directed towards a condition not currently recognized in the claim." (Stip. at 163.)

{¶ 31} 17. Forward Air appealed the November 3, 2022 district hearing officer order granting the C-9 request for a spinal cord stimulator lead revision procedure. (Stip. at 293.) In a letter to the commission dated November 14, 2022, Forward Air, through counsel, withdrew its appeal of the November 3, 2022 district hearing officer order.

{¶ 32} 18. A staff hearing officer issued an order on November 30, 2022 dismissing Forward Air's appeal of the November 3, 2022 district hearing officer order based on the November 14, 2022 letter. The staff hearing officer noted that, as a result, the November 3, 2022 district hearing officer order "remains in full force and effect." (Stip. at 296.)

{¶ 33} 19. Following the denial of the C-9 request for a ketamine infusion, Dr. Soin performed multiple lumbar epidural injections. Examination notes continued to reflect symptoms consistent with sympathetically mediated pain. In addition to references to the allowed conditions, notes from the procedures on November 14, 2022, December 16, 2022, and January 6, 2023 reflected the pre- and postoperative diagnoses of "lumbar radiculopathy." (Stip. at 170, 178, 187.)

{¶ 34} 20. Dr. Soin performed the spinal cord stimulator lead revision procedure on January 26, 2023. The preoperative diagnosis was listed as follows: "1: Radiculopathy / Peroneal Neuropathy" and "2. Spinal cord stimulator lead migration." (Stip. at 195.) The postoperative diagnosis was listed as follows: "1: Radiculopathy / Peroneal Neuropathy" and "2. Spinal cord stimulator lead revision migration." *Id*. The procedure note reflected the following: "Spinal cord stimulator lead revision. Removal of old spinal cord stimulator lead and replacement with 2 new spinal cord stimulator leads and replacement of IPG battery which was dead and not functioning." *Id*.

{¶ 35} 21. A separate note signed by Dr. Soin on January 26, 2023 indicated the reason for the appointment was "spinal cord stimulator lead revision" and listed only the allowed conditions of "[d]isplaced fracture of first metatarsal bone, left foot, initial encounter for closed fracture," and "[c]rushing injury of left foot, initial encounter." (Stip. at 203.)

{¶ 36} 22. Following the spinal cord stimulator lead revision procedure, Kincer was seen by Dr. Soin for suture removal on February 2, 2023. Examination notes again reflected symptoms consistent with sympathetically mediated pain. Assessments listed the allowed conditions of "[d]isplaced fracture of first metatarsal bone, left foot, initial

encounter for closed fracture," and "[c]rushing injury of left foot, initial encounter," in addition to "[p]ain in left foot." (Stip. at 205.)

{¶ 37} 23. Beginning with an appointment on February 2, 2023, Kincer was seen by Derek Black, D.C., for a series of examinations. In the notes from the February 2, 2023 examination, Dr. Black noted that a new stimulator had been placed in Kincer's spine and stated that Kincer "will remain off work as he recovers." (Stip. at 258.) Dr. Black stated that the "findings on exam and diagnosis are consistent with the injury reported by the patient." (Stip. at 258.) On April 11, June 8, and August 28, 2023, Dr. Black conducted examinations of Kincer and extended the period Kincer was to remain off work for an additional 60 days following each exam.

{¶ 38} 24. Dr. Black submitted a series of physician's report of work ability ("MEDCO-14") forms in 2023. In the first MEDCO-14, which was dated February 2, 2023, Dr. Black indicated that Kincer was unable to do the job held on the date of the injury from January 26 through April 28, 2023. Additional notes from Dr. Black included the following: "Off work. Neurostimulator implanted." (Stip. at 214, 280.) Additional MEDCO-14 forms submitted by Dr. Black in 2023 extended the certification of Kincer as unable to work through October 30, 2023. (Stip. at 282, 284, 286.)

{¶ 39} 25. Kincer submitted a request for temporary total compensation ("C-84") form dated February 2, 2023. In a C-86 motion dated March 7, 2023, Kincer, through counsel, requested the approval of temporary total disability compensation from January 26 through April 28, 2023 and to continue based on the February 2, 2023 MEDCO-14 and C-84 request.

{¶ 40} 26. After Kincer requested temporary total disability compensation, Dr. Soin performed lumbar epidural injections. Examination notes continued to reflect symptoms consistent with sympathetically mediated pain. In addition to references to the allowed conditions, notes from the procedures on March 10, April 7, and May 15, 2023 reflected the pre- and postoperative diagnoses of "lumbar radiculopathy." (Stip. at 217, 229, 236.)

{¶ 41} 27. On July 31, 2023, Dr. Soin performed another trigger point injection. Examination notes continued to reflect symptoms consistent with sympathetically mediated pain. In addition to references to the allowed conditions, Dr. Soin's notes

reflected the pre- and postoperative diagnoses of "[f]ibromyalgia, myofascial pain, myositis unspecified." (Stip. at 248.)

{¶ 42} 28. A district hearing officer conducted a hearing on Kincer's request for temporary total disability compensation on August 3, 2023. In an order issued on August 8, 2023, the district hearing officer denied the request.

{¶ 43} 29. Michael J. Griesser, M.D., completed a medical file review dated August 28, 2023. Dr. Griesser opined that the revision of the spinal cord stimulator did not cause new or changed medical circumstances to the allowed conditions of the claim.

{¶ 44} 30. Dr. Black addressed Kincer's condition in a medical questionnaire dated September 6, 2023. Dr. Black responded affirmatively when asked whether Kincer was "temporarily totally disabled from employment from [January 26, 2023] onward to the present (and continuing) due to the allowed conditions in this claim." (Stip. at 266.) Dr. Black was also asked whether the nature of the January 26, 2023 medical procedure resulted in a substantive change in Kincer's condition such that he was temporarily and totally disabled again following the determination in 2020 that his allowed conditions had reached maximum medical improvement. Dr. Black responded affirmatively and noted the procedure caused pain to increase.

{¶ 45} 31. Dr. Soin addressed Kincer's condition in a medical questionnaire dated September 27, 2023. In the first question, Dr. Soin was asked, "What history does the patient provide regarding the work injury of [May 9, 2018]?" (Stip. at 271.) Dr. Soin responded, "Severe back pain [and] radiculopathy," and stated, "see chart notes." *Id.* Second, Dr. Soin was asked, "What physical complaints does he present currently (and as of [January 26, 2023])?" *Id.* Dr. Soin stated that Kincer had "severe intractable pain in leg," again adding, "see chart notes." *Id.* Third, Dr. Soin responded affirmatively when asked whether Kincer was "temporarily totally disabled from employment from [January 26, 2023] onward to the present (and continuing) due to the allowed conditions in this claim." *Id.*

{¶ 46} Fourth, Dr. Soin was asked, "What medical procedure did the patient undergo on [January 26, 2023] for his left lower extremity?" (Stip. at 271.) Dr. Soin responded, "Spinal stimulator lead revision." *Id.* Fifth, after noting that Kincer "was declared to have reached maximum medical improvement in 2020," Dr. Soin was asked,

"Was the nature of this medical procedure such that it resulted in a substantive change in the patient's condition such that he is temporarily and totally disabled again?" *Id*. Dr. Soin responded affirmatively and offered the following explanation: "Yes—Because he cannot work and has to recover from the invasive procedure." *Id*.

{¶ 47} 32. On October 6, 2023, a commission staff hearing officer held a hearing on Kincer's appeal of the August 3, 2023 district hearing officer order. In an order issued October 12, 2023, the staff hearing officer vacated the district hearing officer's order and granted Kincer's request for temporary total disability compensation. The order reflected that Kincer's representative clarified at the October 6, 2023 hearing that Kincer was requesting temporary total disability compensation from January 26, 2023 through the date of the hearing and to continue.

{¶ 48} The staff hearing officer reviewed some of the history of the claim, noting that Kincer was found to be at maximum medical improvement as of April 20, 2020 and underwent a spinal cord stimulator lead revision procedure on January 26, 2023. (Stip. at 272.) The staff hearing officer specifically noted that the January 26, 2023 "surgical procedure was approved in this claim" by the November 3, 2022 order. Based on these findings, the staff hearing officer found that Kincer "has presented sufficient evidence of new and changed circumstances to reinstate temporary total disability compensation in this claim at this time." *Id*. at 273.

{¶ 49} Having found new and changed circumstances, the staff hearing officer found that Kincer was "temporarily and totally disabled and unable to return to and perform the duties of his former position of employment due to the industrial injury in this claim." *Id*. As a result, the staff hearing officer granted temporary total disability compensation from January 26 through October 6, 2023 and to continue on submission of appropriate medical documentation. The staff hearing officer based the decision on the following: (1) the February 2, April 10, June 7, and August 28, 2023 MEDCO-14 forms completed by Dr. Black; (2) the September 27, 2023 medical questionnaire completed by Dr. Soin; (3) the September 27, 2023 office notes of Dr. Soin; (4) the January 26, 2023 operative report; and (5) the June 12, 2020 and November 3, 2022 commission orders.

{¶ 50} 33. Forward Air appealed the October 12, 2023 order to the commission. A staff hearing officer, on behalf of the commission, issued an order on October 31, 2023 refusing Forward Air's appeal.

{¶ 51} 34. Forward Air filed a request with the commission for reconsideration of the October 31, 2023 order. The commission refused Forward Air's request for reconsideration in an order issued on November 30, 2023.

{¶ 52} 35. Forward Air commenced this action in mandamus with the filing of its complaint on March 28, 2024.

{¶ 53} 36. The parties filed a joint stipulation of evidence on May 28, 2024 and a supplemental joint stipulation of evidence on August 30, 2024.

## II. Discussion and Conclusions of Law

{¶ 54} Forward Air seeks a writ of mandamus ordering the commission to deny Kincer's request for temporary total disability compensation.

## A. Requirements for Mandamus

{¶ 55} To demonstrate entitlement to the issuance of a writ of mandamus, Forward Air must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). A writ of mandamus may also " 'issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975). Furthermore, in all matters affecting the rights and obligations of the claimant or employer, the commission must specifically state what evidence has been relied upon and briefly explain the

reasoning for its decision. *See State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), at syllabus.

**B. Temporary Total Disability Compensation**

{¶ 56} The purpose of temporary total disability compensation under the Workers' Compensation Act is to compensate an injured worker for lost earnings while they heal from an injury and are unable to work. *See State ex rel. Klein v. Precision Excavating & Grading Co.*, 2018-Ohio-3890, ¶ 14; *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380 (2000). Compensation in the event of temporary total disability is governed by R.C. 4123.56. *See also* R.C. 4123.54(A) (providing in pertinent part that "every employee, who is injured or who contracts an occupational disease . . . is entitled to receive the compensation for loss sustained on account of the injury [or] occupational disease").

{¶ 57} R.C. 4123.56(A) provides a formula for the calculation of temporary total disability compensation based on a percentage of the worker's average weekly wage. *See State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 2024-Ohio-5519, ¶ 16. In order to be eligible to receive temporary total disability compensation, an injured worker must meet the requirements of R.C. 4123.56(F), which provides as follows:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F). As indicated by R.C. 4123.56(F), a person seeking benefits under the statute must meet certain other qualifications. These other qualifications are found in R.C. 4123.56(A), which lists four circumstances under which temporary total disability compensation is not permitted. At the time of the orders of the commission in this

matter,[3] R.C. 4123.56(A) provided as follows:

> [P]ayment [for temporary total disability] shall not be made for the period [1] when any employee has returned to work, [2] when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, [3] when work within the physical capabilities of the employee is made available by the employer or another employer, or [4] when the employee has reached the maximum medical improvement.

R.C. 4123.56(A). *See State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630, 632 (1982); *Autozone* at ¶ 16 (stating that "work" in the context of this statute "entails remuneration and refers to any substantially gainful employment"). Thus, "R.C. 4123.56(A) designates maximum medical improvement as one of four statutory bases for denying temporary total disability compensation." *State ex rel. Barnes v. Indus. Comm.*, 2007-Ohio-4557, ¶ 14. Maximum medical improvement is defined as a "treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures." Adm.Code 4121-3-32(A)(1).

## C. Continuing Jurisdiction of the Commission

{¶ 58} Pursuant to R.C. 4123.52, the commission has continuing jurisdiction over each case and, subject to certain temporal limitations, it "may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). Despite this "broad statutory language," the Supreme Court of Ohio has construed R.C. 4123.52 to limit the commission's continuing jurisdiction, holding that "the prerequisites for its exercise are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal." *State ex rel. Knapp v. Indus. Comm.*, 2012-Ohio-5379, ¶ 13. *See State ex rel. Griffey v. Indus. Comm.*, 125 Ohio St. 27, 30-31 (1932) (stating that G.C. 1465-86, which allowed the commission to " 'from time to time make such modification or change with respect to

---

[3] Effective March 20, 2025, R.C. 4123.56 was amended by 2024 Am.Sub.S.B. No. 196 to include provisions applicable to advanced practice registered nurses. As these amendments took effect following the actions of the commission at issue in this matter, all references are to the version in effect at the time of the relevant proceedings before the commission.

former findings or orders with respect thereto, as, in its opinion may be justified,' . . . could not have been intended to take away all finality to the orders and findings of the commission").

## D. Analysis

{¶ 59} In 2019, Forward Air approved the request for placement of a spinal cord stimulator. In 2022, Dr. Soin requested approval of a spinal cord stimulator lead revision procedure. This request was approved by a district hearing officer on November 3, 2022. Although Forward Air initially opposed approval of the procedure through its appeal of the district hearing officer's order, Forward Air later withdrew its appeal. Forward Air now challenges the commission's order granting Kincer temporary total disability compensation following the spinal cord stimulator lead revision procedure.

{¶ 60} Forward Air asserts the commission abused its discretion because the evidence relied upon by the staff hearing officer does not constitute some evidence in support of granting temporary total disability compensation. In support of this assertion, Forward Air makes five separate arguments pertaining to the individual pieces of evidence. As some of these arguments are related, they will be addressed together.

{¶ 61} In its first, second, and third arguments, Forward Air challenges Dr. Soin's January 26, 2023 operative report, September 27, 2023 medical questionnaire, and September 27, 2023 office note. Forward Air contends these records do not constitute some evidence because they include nonallowed or disallowed conditions. It is well established that a claimant cannot receive temporary total disability compensation "for disability caused by conditions unrelated to [the] employment injury or resulting from nonallowed medical conditions." *State ex rel. Bradley v. Indus. Comm.*, 77 Ohio St.3d 239, 242 (1997), citing *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 454-55 (1993). *See State ex rel. Jackson Tube Servs. v. Indus. Comm.*, 2003-Ohio-2259, ¶ 29 (reaffirming that temporary total disability "can never be based--even in part--on nonallowed conditions"). Though "[t]he mere presence of a nonallowed condition in a claim for [temporary total disability compensation] does not in itself destroy the compensability of the claim," the claimant in such a case "must meet [their] burden of showing that an allowed condition independently caused the disability." *Bradley* at 242.

{¶ 62} Forward Air argues at length that under *Bradley*, *Jackson Tube*, and related cases, Dr. Soin's operative report cannot serve as some evidence because "[w]hile Dr. Soin did list the allowed condition of peroneal neuropathy in his operative report, he also listed the non-allowed condition of lumbar radiculopathy." (Forward Air's Brief at 16.) These cases, including *Bradley*, do not support the conclusion advanced by Forward Air.

{¶ 63} In *Bradley*, the operative report provided that surgery was performed on the claimant because of a suspected bone tumor, with the postoperative diagnosis including the presence of a suspected bone tumor and another nonallowed condition. A letter from the surgeon "attributed the injury only to the specific nonallowed condition" and "did not attribute the [temporary total disability] to any of the allowed conditions of [the] claim." *Bradley* at 242. Because nothing in the C-84 request or in the other evidence presented to the commission "demonstrated that the allowed condition independently caused" the claimant's temporary total disability and because medical reports in the claim "constituted some evidence to support the hearing officer's finding that [the claimant] was disabled due to unrecognized conditions," the Supreme Court of Ohio agreed with the commission's decision to deny temporary total disability compensation because the claimant's disability resulted from nonallowed conditions. *Id.* at 242-43.

{¶ 64} In this case, Forward Air is correct in noting that Dr. Soin's operative report provided preoperative and postoperative diagnoses that included the nonallowed condition of radiculopathy in addition to the allowed condition of peroneal neuropathy. However, unlike in *Bradley*, in which a subsequent letter from the surgeon failed to attribute the disability to any of the allowed conditions in the claim, Dr. Soin's medical questionnaire, which was completed after surgery, attributed Kincer's disability solely to the allowed conditions in the claim. Further, when asked whether the nature of the January 26, 2023 medical procedure resulted in a substantive change in Kincer's condition such that he was temporarily and totally disabled again following the determination in 2020 that his allowed conditions had reached maximum medical improvement, Dr. Soin responded: "Yes—Because he cannot work and has to recover from the invasive procedure." (Stip. at 271.) These statements constitute some evidence on which the staff hearing officer could rely in finding Kincer to be temporarily and totally disabled.

{¶ 65} Recognizing the possibility that Dr. Soin's responses in the medical questionnaire could constitute some evidence to support the staff hearing officer's determination,[4] Forward Air contends the questionnaire is "invalid as a matter of law." (Forward Air's Brief at 23.) Specifically, Forward Air contends Dr. Soin's responses to the first two questions in the questionnaire "make clear" that Dr. Soin's stated reason for Kincer's temporary total disability was "internally inconsistent" and "contradicted by other reports by Dr. Soin." (Forward Air's Brief at 23.)

{¶ 66} The commission, as the exclusive finder of fact in workers' compensation matters, is solely responsible for the evaluation of the weight and credibility of the evidence. *State ex rel. Vonderheide v. Multi-Color Corp.*, 2019-Ohio-1270, ¶ 7. Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. Bonnlander v. Hamon*, 2020-Ohio-4269, ¶ 15. However, in making its decision, the commission cannot rely on a medical opinion that is equivocal or internally inconsistent. *State ex rel. George v. Indus. Comm.*, 2011-Ohio-6036, ¶ 11. *See State ex rel. Lopez v. Indus. Comm.*, 1994-Ohio-458, 69 Ohio St.3d 445, 449; *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994).

{¶ 67} The Supreme Court of Ohio distinguishes equivocal statements from ambiguous statements. "[E]quivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *Eberhardt* at 657. "A statement is ambiguous if it is 'susceptible of more than one reasonable interpretation.' " *State ex rel. Pilarczyk v. Geauga Cty.*, 2019-Ohio-2880, ¶ 15, quoting *Bailey v. Republic Engineered Steels, Inc.*, 2001-Ohio-236.

{¶ 68} Equivocal medical opinions are "of no probative value" and, therefore, "are not evidence." *Eberhardt* at 657. On the other hand, ambiguous statements "are considered equivocal only while they are unclarified." *Id.* "[O]nce clarified," ambiguous statements "fall outside the boundaries" of equivocation and can be considered as evidence. *Id.* Ambiguous statements are "inherently different" from "repudiated, contradictory or uncertain" statements, which are "unreliable" because they "reveal that the doctor is not sure what [the doctor] means . . . on a critical issue." *Id.* Because

---

[4] Forward Air states that Dr. Soin's response to the third question in the questionnaire "will undoubtedly be claimed by respondents to support the idea that this document is 'some evidence' to support the award." (Forward Air's Brief at 23.)

ambiguous statements "do not relate to the doctor's position," but instead to their "communication skills," such statements merely "reveal that the doctor did not effectively convey what [was] meant" and, as a result, "are not inherently unreliable." *Id.*

{¶ 69} Forward Air contends that the medical questionnaire cannot serve as some evidence because of Dr. Soin's responses to other questions. When asked "[w]hat history does the patient provide regarding the work injury of May 9, 2018," Dr. Soin mentioned "severe back pain [and] radiculopathy," and asked the reader to "see chart notes." (Stip. at 271.) When asked "[w]hat physical complaints" Kincer presented both currently and on the date of the surgery, Dr. Soin mentioned "severe intractable pain in leg," and again asked the reader to "see chart notes." (Stip. at 271.) Forward Air argues that these responses "make the questionnaire contradictory at worst, and ambiguous at best." (Forward Air's Brief at 25.)

{¶ 70} Dr. Soin's medical questionnaire is not equivocal. Though Dr. Soin's mentioned nonallowed conditions, the nonallowed conditions were mentioned in the context of responding to an inquiry regarding the overall history of Kincer's injury and his physical complaints, not as a reason for the spinal cord stimulator lead revision procedure or Kincer's disability. Forward Air also ignores Dr. Soin's references to the office notes completed on September 27, 2023, the same date as the medical questionnaire. As will be discussed below, those office notes also serve as some evidence that the allowed conditions were the cause of Kincer's temporary total disability. Further, the presence of a nonallowed condition alone is not sufficient to render the questionnaire internally inconsistent.

{¶ 71} In the questionnaire, Dr. Soin offered only one opinion regarding whether the allowed conditions in the claim rendered Kincer to be temporarily and totally disabled. When asked, "Was the patient temporarily totally disabled from employment from [January 26, 2023] onward to the present (and continuing) due to the allowed conditions in the claim," Dr. Soin responded in the affirmative by placing a checkmark next to "yes." (Stip. at 271.) This response was not contradicted or rendered ambiguous by the other responses to the questionnaire. As a result, it was some evidence on which the commission could rely. To the extent that Dr. Soin's diagnoses in the operative report generated ambiguity regarding whether the surgery was performed due to nonallowed or disallowed

conditions, Dr. Soin's medical questionnaire constitutes some evidence on which the commission could rely for clarification. *See Lopez*, 69 Ohio St.3d at 449.

{¶ 72} Whether Forward Air or this court is persuaded by this explanation is immaterial as the commission bears sole responsibility for determining the credibility of the evidence. *See State ex rel. Chrysler Corp. v. Indus. Comm.*, 1998-Ohio-460, ¶ 22 (stating that "[w]hether we or the court of appeals is persuaded by this explanation is not at issue; ours are not the credibility determinations that count"). Additionally, even where a statement has been found to be ambiguous on account of the presence of a nonallowed condition, the claimant's burden is not altered such that the claimant is required to demonstrate that **nonallowed** condition was **not** the cause of the disability. *See State ex rel. Ignatious v. Indus. Comm.*, 2003-Ohio-3627, ¶ 33.

{¶ 73} In *Ignatious*, the claimant was released to work from a period of temporary total disability by his physician. After this release, the physician delayed the claimant's return to work and certified a new period of temporary total disability. The contemporaneous medical evidence was "replete with discussion" of a nonallowed condition. *Ignatious* at ¶ 31. In response to a request for clarification from the bureau, the claimant's physician composed medical notes and issued a new C-84 that indicated the claimant was being treated for the allowed conditions and did not list the nonallowed condition as a cause of disability. Thereafter, the physician issued another clarification that the claimant's disability was " 'due to his allowed condition.' " *Id*. at ¶ 20. The commission denied the claimant's request for temporary total disability, inferring from the physician's earlier references to the nonallowed condition that the nonallowed condition was contributing to the claimant's disability. The Supreme Court of Ohio reversed the commission's determination.

{¶ 74} Recognizing that the commission was "entitled to draw inferences from the evidence before it," the Court nevertheless found the commission was "not empowered to . . . alter the burden of proof." *Id*. at ¶ 32. As the claimant had "supplied evidence of a direct causal relationship between his [allowed conditions] and his disability," the claimant was not "required to further show that his [nonallowed condition] is not causing his inability to work." *Id*. at ¶ 33. The fact that, after the physician's clarification, the commission continued to rely on the presence of a nonallowed condition to disqualify the clarifying

evidence "implie[d] but one thing: that the evidence was deemed insufficient because it did not affirmatively state that [the nonallowed condition] was not influencing [the] claimant's inability to work." *Id*. The Court held that by "tacitly requiring this, the commission overstepped its bounds." *Id*.

{¶ 75} Thus, even though Dr. Soin's operative report and medical questionnaire contain references to a nonallowed condition, Kincer's burden remained the same—Kincer was required to show that the allowed condition alone was the cause of the temporary total disability. Dr. Soin indicated in the medical questionnaire that Kincer was temporarily and totally disabled beginning on January 26, 2023 due to the allowed conditions in the claim. Though Dr. Soin's reference to nonallowed conditions "was evidence that could support a different conclusion" regarding the cause of the disability, this reference does not "make [the] report so internally inconsistent that it could have no evidentiary value." *State ex rel. Blanton v. Indus. Comm.*, 2003-Ohio-3271, ¶ 23.

{¶ 76} Next, with regard to Dr. Soin's September 27, 2023 office notes, Forward Air argues that it does not constitute some evidence because it "documents the presence of sympathetically mediated pain findings on physical exam which raises, yet again, the specter of treatment being provided for a disallowed condition." (Forward Air's Brief at 26.) However, the "specter of treatment" for a nonallowed condition or even the presence of a nonallowed condition does not in and of itself destroy the compensability of a claim. *See Bradley* at 242. Dr. Soin does not attribute Kincer's disability to the presence of sympathetically mediated pain. In those office notes, Dr. Soin lists the allowed conditions in the assessment section, without any specific mention of radiculopathy. Rather, as discussed below, Dr. Soin's office notes serve as evidence that the disability was causally related to the allowed conditions in the claim.

{¶ 77} Forward Air also argues with regard to the September 27, 2023 office note that "Dr. Soin's expression that Mr. Kincer '. . . COULD NOT work after the lead revision on 1/6/23' . . . falls into the same trap . . . by assuming the mere authorization of a procedure carries with it an automatic qualification for temporary total compensation." (Emphasis in original.) (Forward Air's Brief at 26.) Forward Air's selective quotation of Dr. Soin's September 27, 2023 office note leaves significant portions of that record

unrecognized. In the assessment section of the office note, Dr. Soin listed the allowed conditions and stated the following:

> - [Kincer] COULD NOT work after the lead revision on 1/26/23
>
> - [Kincer] needed temporary total disability during that time
>
> - you cannot work after a lead revision or they will move again. L[e]ads need to heal in place since they migrated which is why [Kincer] could NOT work after the procedure.

(Emphasis in original.) (Stip. at 269.) Contrary to Forward Air's arguments, Dr. Soin's September 27, 2023 office note serves as some evidence that Kincer's disability was due to the allowed conditions in the claim.

{¶ 78} Forward Air also cites to Dr. Soin's other office notes as "independent proof that the surgery was undertaken to treat the disallowed [complex regional pain syndrome] and the non-allowed lumbar radiculopathy." (Forward Air's Brief at 17.) Forward Air reviews in great detail the history of Dr. Soin's notes, which reflect, at various times, disallowed procedures, nonallowed conditions, or the presence of sympathetic mediated pain. Forward Air argues that "[t]hese records alone support that the pain condition being treated before the surgery and at the time of surgery was not the allowed peroneal neuropathy." *Id.*

{¶ 79} Even if these records could "support" discrediting the proffered reasons for the surgery, Forward Air mistakes the role of this court for that of the commission. As previously explained, Dr. Soin's September 27, 2023 medical questionnaire and September 27, 2023 office notes serve as some evidence supporting a finding that Kincer's temporary total disability was the result of the allowed conditions of the claim. Nothing in Dr. Soin's other notes renders the evidence relied upon by the commission invalid as a matter of law; rather, the other office notes—insofar as they are relevant to the issue of temporary total disability at all—are relevant to Dr. Soin's credibility and the weight of the evidence. Weighing the evidence in the record, including Dr. Soin's office notes, is the role of the commission. The commission alone, not this court, is charged with sole responsibility for weighing the evidence and assessing credibility. *See State ex rel. Huber v. Indus. Comm.*, 2025-Ohio-1029, ¶ 6 (10th Dist.), citing *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981) ("Questions of credibility and the weight to be

given evidence are clearly within the discretion of the commission as fact finder."). Thus, Forward Air's arguments are not well-taken.

{¶ 80} In conclusion, the staff hearing officer, occupying the commission's role as finder of fact, weighed the evidence and assessed credibility in relying on Dr. Soin's January 26, 2023 operative report, September 27, 2023 medical questionnaire, and September 27, 2023 office notes as some evidence to support finding the allowed conditions were the cause of Kincer's temporary total disability. Forward Air's request would have this court repeat the process but reach a different result. That is not this court's role in mandamus.

{¶ 81} Next, Forward Air argues the MEDCO-14 forms completed by Dr. Black do not constitute some evidence supporting a finding of new and changed circumstances. The staff hearing officer relied on the MEDCO-14 forms completed by Dr. Black dated February 2, April 10, June 7, and August 28, 2023.

{¶ 82} First, Forward Air argues that the staff hearing officer's reliance on the four MEDCO-14 forms without providing "comment on or [a] cite to the corresponding office notes of Dr. Black" was "fatal to the some evidence test when one considers that two of the four MEDCO-14s ask the reader to 'see notes.' " (Forward Air's Brief at 26.) Forward Air provides no authority for this argument. Though Dr. Black referenced notes in response to questions on the MEDCO-14 forms pertaining to clinical findings, the MEDCO-14 forms themselves listed the allowed conditions as disabling Kincer from work. Consistent with *Noll*, the commission must state the evidence it relies upon in reaching its decision and provide a brief explanation of its reasoning. Forward Air has not shown that the absence of Dr. Black's office notes from the staff hearing officer's order prevents the MEDCO-14 forms from serving as some evidence.

{¶ 83} Forward Air next argues that various statements in Dr. Black's office notes demonstrate that the MEDCO-14 forms also "fail the legal test for validity under *Bradley* and *Jackson Tube*." (Forward Air's Brief at 28.) Forward Air argues that statements in the notes leave "no doubt that, much like Dr. Soin, Dr. Black has employed subterfuge to shade the real reason he is disabling Mr. Kincer" as the "presenting problems are really" disallowed or nonallowed conditions in the claim. *Id*. at 30. As has been abundantly

discussed with regard to Dr. Soin's medical questionnaire and chart note, the presence of a nonallowed condition does not in itself destroy the compensability of the claim.

{¶ 84} Puzzlingly, Forward Air also points out that absent from Dr. Black's February 2, 2023 office note "and more specifically from the corresponding MEDCO-14 relied upon to award compensation, was any recognition that the surgery was directed at addressing radiculopathy." (Forward Air's Brief at 27.) However, the absence of radiculopathy, a nonallowed claim, from the reasons provided by Dr. Black for finding Kincer to be temporarily disabled from employment, is actually evidence in support of finding that Kincer was disabled due to the allowed conditions in the claim. Similarly, Forward Air argues that the June 8, 2023 office note included "a history of leg pain without accounting for the fact that the corresponding treatment records of Dr. Soin ascribe that leg pain to sympathetically mediated pain and the diagnosis of lumbar radiculopathy." (Forward Air's Brief at 29.) Regardless of the truth of those statements regarding Dr. Soin's treatment, the absence of nonallowed conditions in Dr. Black's note is again evidence in support of finding Kincer was disabled due to the allowed conditions in the claim. These and other arguments made by Forward Air with regard to Dr. Black's office notes fail to establish that Dr. Black's MEDCO-14 forms, which were relied upon by the staff hearing officer, cannot serve as some evidence in support of the staff hearing officer's determination that Kincer was temporarily and totally disabled due to the allowed conditions of the claim.

{¶ 85} Forward Air also points out that one of Dr. Black's office notes was dated April 11, 2023, the day after the MEDCO-14 dated April 10, 2023. Another office note was dated June 8, 2023, the day after the June 7, 2023 MEDCO-14. Forward Air fails to explain how the difference between these dates prevent the MEDCO-14 forms, either individually or as a whole, from serving as some evidence.

{¶ 86} Next, Forward Air argues the commission's orders dated June 12, 2020 and November 3, 2022 do not constitute some evidence upon which the commission could rely. Forward Air states that these orders provide no probative evidence to support the payment of temporary total disability compensation. In the June 12, 2020 order, Kincer's allowed conditions were found to have reached maximum medical improvement. In the November 3, 2022 order, the commission, through a district hearing officer, granted the

C-9 request for spinal cord stimulator lead revision based on the finding that the requested treatment was "medically necessary and appropriate for the allowed conditions in the claim" and "reasonably related" to Kincer's May 9, 2018 injury. (Stip. at 167.)

{¶ 87} Forward Air appears to base its argument regarding the November 3, 2022 order on a misapprehension. Forward Air argues the November 3, 2022 order "denied treatment requested by Dr. Soin on the basis that the treatment was 'directed toward[s] a condition not currently recognized in the claim.' " (Forward Air's Brief at 31, quoting Stip. at 163.) It is true that the commission, through a staff hearing officer, affirmed the denial of a C-9 request from Dr. Soin for a ketamine infusion on November 3, 2022. However, on the same date, the commission also granted the C-9 request for the spinal cord stimulator lead revision procedure that formed the basis for the subsequent request for temporary total disability compensation.

{¶ 88} With regard to the June 12, 2020 and November 3, 2022 orders, the staff hearing officer stated:

> The Staff Hearing Officer notes that [Kincer] was previously found to be at maximum medical improvement as of [April 20, 2020] for the allowed medical conditions in this claim, by an Industrial Commission order, issued [June 12, 2020]. Subsequent to this finding, [Kincer] underwent a surgical procedure on [January 26, 2023] consisting of a spinal cord stimulator lead revision. The Staff Hearing Officer notes that this surgical procedure was approved in this claim, by an Industrial Commission order, issued [November 3, 2022].
>
> Based on the foregoing, the Staff Hearing Officer finds that [Kincer] has presented sufficient evidence of new and changed circumstances to reinstate temporary total disability compensation in this claim at this time.

(Stip. at 272-73.) It is clear from the staff hearing officer's order that the reliance on these two orders was based on the recognition that the allowed conditions had previously been declared at maximum medical improvement and that the authorization of the surgery presented a new and changed circumstance.

{¶ 89} As the commission points out, "[t]he fact that the surgery was allowed is some evidence to support that the surgery stemmed from an allowed condition in the claim rather than a non-allowed condition." (Commission's Brief at 25.) Indeed, this court has stated that "the fact that additional treatment has been authorized could constitute 'some

evidence' in support of an application for [temporary total disability] compensation; however, it is not necessarily indicative." *State ex rel. Ritzie v. Reece-Campbell, Inc.*, 2014-Ohio-2782, ¶ 11 (10th Dist.). Here, it is noted that although Forward Air originally challenged the approval of the surgical procedure, it ultimately withdrew its challenge. Thereafter, the commission found the authorization of additional treatment, in addition to the other evidence relied upon by the staff hearing officer, was some evidence that there existed new and changed circumstances and that the temporary total disability compensation was based on the allowed conditions of the claim. Thus, Forward Air has failed to show that June 12, 2020 and November 3, 2022 do not constitute some evidence.

{¶ 90} Finally, at various points throughout its brief and reply brief, Forward Air questions whether there were new and changed circumstances to permit consideration of temporary total disability following the declaration in 2020 that Kincer had reached maximum medical improvement. Generally, "[w]hen a claimant reaches maximum medical improvement, payment of temporary total disability compensation is barred." *State ex rel. Moore v. Internatl. Truck & Engine*, 2007-Ohio-6055, ¶ 35 citing R.C. 4123.56(A). Nevertheless, the commission's continuing jurisdiction under R.C. 4123.52 "allows for reinstatement of temporary total disability compensation after [a maximum medical improvement] determination if new and changed circumstances warrant." S*tate ex rel. Moore v. Internatl. Truck & Engine*, 2007-Ohio-6055, ¶ 35, citing *State ex rel. Bing v. Indus. Comm.*, 61 Ohio St.3d 424 (1991), syllabus. The Supreme Court of Ohio recognized in *Bing* that "claimants who had previously been declared as [having reached maximum medical improvement] could experience temporary exacerbation of their condition that justified further treatment or even temporary total disability compensation, as the claimant struggled to recover his or her previous level of well-being." *State ex rel. Conrad v. Indus. Comm.*, 2000-Ohio-365, ¶ 14.

{¶ 91} Forward Air argues that "the singular fact that treatment is approved does not necessitate a finding of new and changed circumstances for purposes of determining eligibility for temporary total disability." (Forward Air's Reply Brief at 4.) Indeed, while surgery is "not . . . automatically a new and changed circumstance," it has been held that "surgery **could be** a new and changed circumstance sufficient to reinstate temporary total disability compensation in an individual previously declared [at maximum medical

improvement].” (Emphasis added.) *Moore* at ¶ 36, citing *Chrysler Corp.*, 1998-Ohio-460. The Court in *Moore* held that an exacerbation of a claimant's condition following treatment or surgery could constitute new and changed circumstances sufficient to reinstate temporary total disability compensation.

{¶ 92}  As in *Moore*, some evidence in the record supports finding that the approved surgical procedure resulted in new and changed circumstances sufficient to reinstate temporary total disability compensation. The staff hearing officer relied on Dr. Soin's September 27, 2023 office note which stated that Kincer "COULD NOT work after the lead revision" procedure on January 26, 2023. (Emphasis in original.) (Stip. at 269.) Dr. Soin explained that "you cannot work after a lead revision or they will move again." *Id.* Further, Dr. Soin stated that "[le]ads need to heal in place since they migrated which is why [Kincer] could NOT work after the procedure." (Emphasis in original.) *Id.* This is some evidence to support the staff hearing officer's finding that there existed new and changed circumstances sufficient to support a new period of temporary total disability. Additionally, as previously discussed, Dr. Black's MEDCO-14 forms and the November 3, 2022 order authorizing the surgical procedure served as some evidence supporting new and changed circumstances. As a result, Forward Air's argument that there is not some evidence to support a finding of new and changed circumstances is rejected.

**E. Conclusion**

{¶ 93}  For the foregoing reasons, Forward Air has not demonstrated a clear legal right to the requested relief or a clear legal duty for the commission to provide it. Accordingly, it is the decision and recommendation of the magistrate that Forward Air's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.